UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALBERT L. GRAY, Administrator, )
et al., Plaintiffs, )
)
)
)
v. )   C.A. No. 04-312L
)
)
)
JEFFERY DERDERIAN, )
et at., Defendants. )


ESTATE OF JUDE B. HENAULT, )
et al., Plaintiffs, )
)
)
)
v. )   C.A. No. 03-483L
)
)
AMERICAN FOAM CORPORATION; )
et al., Defendants. )


In Re Motion to Dismiss of Defendant Certain Underwriters At Lloyd's, London.

DECISION AND ORDER

Ronald R. Lagueux, Senior United States District Judge.

This matter comes before the Court on a Motion to Dismiss filed by Defendant Certain Underwriters At Lloyd's, London (hereinafter "Lloyd's") pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant seeks to have this Court dismiss all allegations against it. For reasons explained below, Defendant's Motion to Dismiss is granted.

Facts

On February 20, 2003, a massive fire destroyed The Station nightclub in West Warwick, Rhode Island. The fire began when Great White, the featured rock band performing that evening, through its tour manager, ignited pyrotechnic devices on stage as it began to perform. Eyewitness accounts indicated that the pyrotechnics caused the polyurethane foam insulation lining the walls and ceiling around the stage to catch fire. The entire structure was soon engulfed in flames, with dark smoke and extreme temperatures adding to the ensuing chaos as patrons, employees, and band members tried to escape. One hundred people lost their lives and over 200 others were injured as a result of the fire.

The Complaint

At this stage in the litigation, as reflected by the First Amended Master Complaint (hereinafter "the Complaint"), about 250 plaintiffs have sued over 50 defendants in an eighty-one count Complaint. The allegations concerning Lloyd's as set forth in the Complaint are as follows:

> 666. Those Underwriters At Lloyd's, London Subscribing To Policy No. 05409 (hereinafter, "Lloyd's") is a surplus lines insurer approved to issue policies in the State of Rhode Island, having a designated agent for service in Rhode Island, and having sufficient minimum contacts with Rhode Island to be subject to this Court's jurisdiction.
> 667. Lloyd's issued a policy of liability insurance to Michael Derderian for

his business at The Station numbered 05409 and effective March 24, 2000 to March 24, 2001.

668. A Lloyd's syndicate also issued a policy of liability insurance to Michael Derderian for his business at The Station numbered 08209 and effective March 24, 2001 to March 24, 2002.

669. A Lloyd's syndicate had previously issued a policy of liability insurance to Howard Julian d/b/a The Station numbered LJD/SPO164 and effective August 14, 1999 to August 14, 2000 (but cancelled on March 9, 2000).

670. Gresham & Associates of R.I., Inc.[1] (hereinafter "Gresham"), previously known as Excess Insurance Underwriters of R.I., Inc., is a corporation organized under the laws of the State of Rhode Island in the business of selling insurance.

671. At various times, including but not limited to May-June, 2000 Lloyd's, through its agents and servants Excess Insurance Underwriters of R.I., Inc. (and others) conducted inspections of the insured premises.

672. Lloyd's and Gresham (then known as Excess) were negligent in performing said inspections. Their negligence included without limitation:
    a.   failing to adequately inspect The Station for safety hazards and fire/building code violations;
    b.   failing to note the presence of highly flammable surface treatments;
    c.   failing to note the inadequacy of exits;
    d.   failing to note practices of

---

[1] Although Defendant Gresham & Associates of R.I., Inc. has responded to these allegations by filing an Answer and Affirmative Defense, it has not filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Therefore, this Court will only consider the Motion to Dismiss of Defendant Lloyd's at this time.

3

     overcrowding;
  e. allowing the use of dangerous pyrotechnic devices during performances at The Station;
  f. knowing of numerous dangerous conditions and fire hazards at The Station and failing to remedy those conditions or order the insureds to remedy them;
  g. failing to protect members of the public for the foreseeable risk of serious injury or death at The Station;
  h. failing to adequately oversee, supervise, monitor, evaluate, train and/or retrain those performing inspections of The Station;
  i. other acts and failures to act that may become apparent after discovery.

673. Defendants Lloyd's and Gresham, in undertaking to perform said inspections, recognized or should have recognized that the competent performance of the inspections was necessary for the protection of third persons, including Plaintiffs.

674. Lloyd's and Gresham's insureds, Julian and Derderian, relied upon the results and recommendations of said negligently performed inspections.

675. The negligence of Lloyd's and Gresham, and each of them, was a proximate cause of Plaintiffs' deaths and injuries.

Compl., ¶¶ 666-75. Plaintiffs seek damages from Lloyd's and Gresham for their negligence. Compl., ¶¶ 676-79.

In order to examine the allegations asserted against Lloyd's, it is important to understand its identity. In <u>McAleer v. Smith</u>, 791 F. Supp. 923 (D.R.I. 1992), this writer explained at length the origin and function of Lloyd's. 791 F. Supp. at 931-32. The Society of Lloyd's, as it is properly called, does

4

not sell insurance itself. Id. at 931, 932. In fact:

> Lloyd's does not conduct any insurance business. Lloyd's does not underwrite risks, issue policies, receive or collect premiums, or pay claims. Lloyd's does not procure business for any underwriter or syndicate in the market, does not enter into or negotiate insurance contracts with insurance agents or brokers, and does not engage in commercial undertakings or promotional activities related to insurance. All insurance business conducted in the Lloyd's market is undertaken by the individual underwriters and their syndicates, not by Lloyd's.

Id. at 932. Lloyd's can most accurately be described as "a self-regulated insurance market in which groups of individual insurance underwriters join together in syndicates for administrative convenience." Id. at 931. "In essence Lloyd's resembles the New York Stock Exchange, which houses and regulates its member stockbrokers but takes no part in the trading of securities." Id. at 932.

Given this description of Lloyd's, it is of some concern that Plaintiffs have failed to identify which particular Underwriters At Lloyd's they are referring to in the Complaint. Plaintiffs generically identify "Those Underwriters At Lloyd's" and "Lloyd's syndicate[s]" that issued certain policies of liability insurance to the owners of The Station. Compl., ¶¶ 666-69. Instead, Plaintiffs should have more precisely identified which Underwriters At Lloyd's they reference in their allegations. In any event, Defendant has not objected to this

vague description and so the Court will move on to the Motion to Dismiss.

## Standard of Review

Defendant Lloyd's moves to dismiss the claim against it for Plaintiffs' failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "In the course of its analysis, the Court will assume that all allegations are true." Gray v. Derderian, 365 F. Supp. 2d 218, 223 (D.R.I. 2005).[2] The allegations and all reasonable inferences to be drawn from them will be construed in the light most favorable to Plaintiffs. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). As articulated by the United States Supreme Court, "the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Defendant's motion will fail if "the well-pleaded facts, taken as true, justify recovery on any supportable legal theory." Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000).

Although Defendant has attempted to submit additional

---

[2] This was an earlier opinion issued by the Court relating to the fire at The Station nightclub. It concerned two motions to dismiss filed by bulk polyurethane foam manufacturers. Their motions were denied.

material for the Court to consider, at this stage in the litigation this Court will only consider Plaintiffs' allegations contained in the Complaint. "[B]ecause discovery has been and remains stayed in this litigation, neither side has had an opportunity to develop a complete record in support of their allegations or defenses. Consequently, the Court has chosen to exclude all extraneous [material], as well as all arguments in reliance thereon," in ruling on this Motion to Dismiss. Gray, 365 F. Supp. 2d at 223.

## Analysis

In Gray v. Derderian, No. 04-312L, 03-483L, 2005 WL 3005046 (D.R.I. Nov. 9, 2005), this Court dismissed all allegations against the most recent liability insurer of the owners of The Station nightclub, Essex Insurance Company (hereinafter "Essex"). In the same decision, this Court also dismissed all allegations against Multi-State Inspections, Inc. and High Caliber Inspections, Inc., Essex' agents and servants that conducted inspections of The Station premises on behalf of Essex. This Court concluded that the three aforementioned defendants did not owe the plaintiffs a common law duty of due care in inspecting the premises as a matter of law. Gray, 2005 WL 3005046, at *12. Therefore, Plaintiffs could not maintain a cause of action for negligent inspection against those defendants. Id. By applying the holding and analysis articulated in Gray, this Court now

concludes that Lloyd's similarly owes no duty of due care to Plaintiffs in inspecting The Station premises. <u>See</u> <u>id.</u> As a result, Plaintiffs cannot maintain a cause of action for negligent inspection against Lloyd's.

It should be noted that Lloyd's occupies a position one step further removed from Plaintiffs than Essex. Whereas Essex was alleged to have issued a liability policy to Michael Derderian effective during a period which included the date of the fire at The Station, Plaintiffs allege that Lloyd's issued similar policies to Derderian and an earlier owner effective only during periods that preceded the date of the fire. Compl., ¶¶ 653, 667-69. In addition, the inspections mentioned here took place long before Essex was on the risk. Compl., ¶¶ 653, 671. Therefore, Plaintiffs' claims against Lloyd's are even more remote than the dismissed claims asserted against Essex. That would present a formidable proximate cause barrier for Plaintiffs to overcome if this case proceeded further against Lloyd's. However, since Lloyd's owes no duty to Plaintiffs as a matter of law regarding inspections, it is not necessary for the Court to deal with such issues. Suffice it to say that Plaintiffs have not alleged a cause of action against Lloyd's that could lead to recovery.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss of Defendant Certain Underwriters At Lloyd's, London hereby is

granted. No judgment will enter at this time.

It is so ordered.

*/s/ Ronald R. Lagueux*
Ronald R. Lagueux
Senior United States District Judge
December 6, 2005