UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALBERT L. GRAY, Administrator,
et al., Plaintiffs,

v.                                    C.A. No. 04-312L

JEFFREY DERDERIAN,
et al., Defendants.


ESTATE OF JUDE B. HENAULT,
et al., Plaintiffs,

v.                                    C.A. No. 03-483L

AMERICAN FOAM CORPORATION;
et al., Defendants.


In Re Motions to Dismiss of Defendants Anchor Solutions Company,
Inc. (previously Abacus Service Company, Inc.), V. B. Gifford &
Company, Inc., Gresham & Associates of RI, Inc., and Surplex
Underwriters, Inc.

### DECISION AND ORDER

Ronald R. Lagueux, Senior District Judge.

This matter is before the Court on Motions to Dismiss,
pursuant to Federal Rule of Civil Procedure 12(b)(6), filed
by four similarly-situated defendants.  They include Anchor
Solutions Company, Inc. (previously Abacus Service Company, Inc.)
("Anchor"), V. B. Gifford & Company, Inc. ("Gifford"), Gresham &
Associates of RI, Inc. ("Gresham"), and Surplex Underwriters,
Inc. ("Surplex").  All four companies are alleged to have
conducted premises inspections at various times, in connection
with the issuance or renewal of insurance policies to the
premises owners.  Because the allegations against these

Defendants are similar and raise similar legal issues, the Court will address them together. For reasons explained below, the Court will grant the Motions to Dismiss brought by these four Defendants.

<u>Background</u>

On February 20, 2003, a deadly fire in West Warwick, Rhode Island, destroyed a nightclub known as The Station. The fire started as the featured rock band, Great White, began its live performance and the club was crowded with spectators, staff and performers. The opening featured stage fireworks, ignited by the band's tour manager, as the band took the stage.

According to eyewitnesses, the fireworks created sparks behind the stage which ignited polyurethane foam insulation on the club's ceiling and walls. In minutes, the entire building was on fire and over 400 people were struggling to escape the crowded, dark and smoky space. The final toll: One hundred people dead and over 200 injured.

Numerous lawsuits, both criminal and civil, were filed throughout southern New England in both state and federal courts. The lawsuits have been consolidated in this Court, which asserted its original federal jurisdiction based on the Multiparty, Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369. See <u>Passa v. Derderian</u>, 308 F. Supp. 2d 43 (D.R.I. 2004). Since that time, this Court has ruled on several motions to dismiss. Those

-2-

decisions may be found under the caption Gray v. Derderian at 365 F. Supp. 2d 218 (D.R.I. 2005); 371 F. Supp. 2d 98 (D.R.I. 2005); 389 F. Supp. 2d 308 (D.R.I. 2005); 400 F. Supp. 2d 415 (D.R.I. 2005); 404 F. Supp. 2d 418 (D.R.I. 2005); and 448 F. Supp. 2d 351 (D.R.I. 2005).

In February 2006, Plaintiffs amended their master complaint to add more plaintiffs, and to join additional defendants, including the four Defendants herein. All claims are now incorporated in a Third Amended Master Complaint ("the Complaint"), which includes claims of over 260 plaintiffs against 97 defendants.

### Standard of Review

Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted. Accordingly, in the course of its analysis, the Court will assume that all Plaintiffs' allegations are true. The allegations and all reasonable inferences to be drawn from them will be construed in the light most favorable to the Plaintiffs. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). As stated by the United States Supreme Court, "the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley

v. Gibson, 355 U.S. 41, 45-46 (1957).  Defendants' motion will
fail if "the well-pleaded facts, taken as true, justify recovery
on any supportable legal theory."  Cruz v. Melecio, 204 F.3d 14,
21 (1st Cir. 2000).

### The allegations in the Complaint

#### *Anchor*

In paragraphs 725-730 of the Complaint, Plaintiffs allege
that, on or about April 27, 2000, Anchor inspected The Station
premises at 211 Cowesett Avenue in West Warwick.  This inspection
was conducted in connection with a liability insurance policy
that was issued to the owners and operators of The Station.
Plaintiffs allege that the inspection was negligently performed,
that Anchor knew or should have known that a competent inspection
was necessary to insure the safety of club patrons, and that
Anchor's negligence was the proximate cause of Plaintiffs'
injuries.  The specific negligent acts attributed to Anchor
include, but are not limited to, the following:

> a.  failing to adequately inspect The Station
> for safety hazards and fire/building code
> violations;
> b.  failing to note the presence of highly
> flammable surface treatments;
> c.  failing to note the inadequacy of exits;
> d.  failing to note practices of
> overcrowding;
> e.  allowing the use of dangerous pyrotechnic
> devices during performances at The Station;
> f.  knowing of numerous dangerous conditions
> and fire hazards at The Station and failing
> to remedy those conditions or order the
> insureds to remedy them;

> g.  failing to protect members of the public
> for the foreseeable risk of serious injury or
> death at The Station;
> h.  failing to adequately oversee, supervise,
> monitor, evaluate, train and/or retrain those
> performing inspections of The Station; and
> i.  other acts and failures to act that may
> become apparent after discovery.

Complaint, p. 155, ¶ 726.

### Gifford, Gresham and Surplex

In paragraphs 719-724, Plaintiffs allege that Gifford inspected The Station premises "at various times, including but not limited to August 27, 1999..." in connection with a liability insurance policy issued to its owners and operators. Complaint, p. 153, ¶ 720.  The allegations against Gifford are identical to the allegations against Anchor, as quoted above.

Paragraphs 666-675 pertain to Defendant Gresham.  According to the Complaint, Gresham was previously known as Excess Insurance Underwriters of R.I., Inc., which carried out inspections of The Station premises during the spring of 2000, and possibly at other times, on behalf of co-defendant Underwriters at Lloyd's, London, in connection with liability insurance policies issued to co-defendants Michael Derderian and Howard Julian.  The allegations against Gresham are identical to those made against Anchor and Gifford.

Surplex is alleged to have conducted inspections of The Station on various occasions, including but not limited to April

4, 1996, and March 25, 1998, in connection with a liability
insurance policy.  Again, the allegations against Surplex are
identical to the allegations against Anchor, Gifford and Gresham.

<u>Analysis</u>

Defendants argue, and the Court concurs, that the outcome of
their Motions to Dismiss is controlled by this writer's earlier
decision granting the motions to dismiss of co-defendants Essex
Insurance Company, Multi-State Inspections, Inc., and High
Caliber Inspections, Inc. (the "Essex defendants"), which can be
found at 448 F. Supp. 2d 351 (D.R.I. 2005), under the ubiquitous
caption, <u>Gray v. Derderian</u> (the "Essex decision").  The Essex
defendants were also alleged to have negligently carried out
inspections of The Station premises for the purpose of issuing
commercial liability insurance policies to its owners.  In fact,
the allegations against the Essex defendants were identical to
those against Anchor, Gifford, Gresham and Surplex.  Because the
alleged liability of the Essex defendants and Defendants herein
all results from the same conduct and relies on the same cause of
action, <i>i.e.</i>, negligent insurance inspection, the Court's ruling
in the Essex decision provides the law of the case for the
present decision.  <u>See</u> <u>Harlow v. Children's Hospital</u>, 432 F.3d
50, 55 (1st Cir. 2005).  In ruling on the Essex defendants'
motions to dismiss, this Court addressed three arguments: common
law negligence; third-party liability under the Restatement

-6-

(Second) of Torts; and statutory immunity.   Each argument will be summarized briefly below.

### *Common law negligence*

In the Essex decision, this Court quoted the Rhode Island Supreme Court, which wrote that, "every negligence case begins with a consideration of whether a legally cognizable duty runs from the defendant to the plaintiff."   448 F. Supp. 2d at 356 (quoting <u>Kenney Mfg. Co. v. Starkweather & Shepley, Inc.</u>, 643 A.2d 203, 206 (R.I. 1994)).   Because Essex conducted the inspections for its own purposes – to assess the financial risk at stake in underwriting the insurance policy, this Court determined that it could not "be charged with having a duty owed to its insured or third parties to inspect with reasonable care..." unless the inspection somehow made conditions worse in the building.   Id. at 357.

> Plaintiffs do not allege that Essex, through its agents, conducted the inspections for the benefit of possible future patrons of the nightclub or even the owners of the club. Instead, it is clear that Essex performed the inspections of The Station premises for its own benefit to evaluate the risks, determine the amount of insurance to issue and what premiums to charge.   Essex could not have anticipated that its inspection would create a risk of harm toward any member of the general public, including any unidentifiable future patron of The Station.   Therefore, Essex had neither a duty to inspect the premises, nor a duty to inspect in any particular manner.

Id. at 357-358.  This analysis holds true for the new insurance inspection defendants herein: they owed no duty of care to The Station patrons, or even to its owners, to refrain from negligent conduct in the performance of the inspection.  Consequently, Anchor, Gifford, Gresham and Surplex are not liable as a matter of law, based on the theory of common law negligence, on the counts alleging that their negligent inspections caused harm to Plaintiffs.

### *Third party liability*

In their memoranda of law filed in conjunction with the Essex decision, Plaintiffs put forward a theory of liability based on the Restatement (Second) of Torts § 324A.  This section assigns potential liability to a party who undertakes to perform a task to ensure the safety of a third person or his property, but who does so in such a way as to increase the risk of harm. 448 F. Supp. 2d at 358.  In the Essex decision, this Court established that § 324A has not been adopted by the Rhode Island Supreme Court, and that, consequently, it is not the established law.  Id. at 359-360.  Moreover, this writer continued,

> Applying these principles to the case sub judice, it is apparent that Essex did not undertake to provide a service to any other individual or entity.  Essex cannot be found to have engaged in an undertaking for the intended benefit of The Station owners or patrons simply because Michael Derderian may have known about relied on, and even benefitted from the inspections of The Station premises.  Furthermore there is no

> allegation in the Complaint that Essex ever
> undertook to perform the inspections for the
> benefit of The Station owners or patrons.
> Therefore, even if Restatement (Second) of
> Torts § 324A is considered to be the law in
> Rhode Island, Plaintiffs' claims still fail.
> In short, § 324a is clearly inapplicable to
> this case.

Id., 361-362.

### *Statutory immunity*

Plaintiffs advanced a third unsuccessful theory of liability in their memoranda of law in the Essex case, based on Rhode Island General Laws § 27-8-15.  This statutory section, titled "Insurance Inspections," provides that certain types of insurers are immune from liability for conducting inadequate inspections in connection with the issuance or renewal of insurance policies. The types of insurers listed in section are "property, casualty or boiler and machinery insurance..." § 27-8-15.  Plaintiffs argued that the exclusion of liability insurers from this list indicated affirmative legislative intent to impose responsibility on this category of insurers for inadequate inspections.  This Court reviewed principles of statutory interpretation as set forth under Rhode Island law, and reviewed the general purposes of § 27-8-15, concluding as follows:

> Rather than intending to carve out select
> instances where insurers would be free from
> owing an otherwise existent duty, the purpose
> behind § 27-8-15 merely was to codify the
> absence of any common law duty owed to third
> parties by insurers who conduct inspections

-9-

> for their own purposes.  To conclude that the
> Rhode Island legislature intended to exclude
> liability insurers from the category of
> insurers eligible for immunity under § 27-8-
> 15 would be entirely inconsistent with the
> general policy of the statute.

Id. at 363.

Based on the reasoning of the Essex decision, as outlined above, the Court holds that Defendants Anchor, Gifford, Gresham and Surplex have no legal liability for the injuries to The Station's patrons.  To the extent that the defendants are inspection companies only, their potential liability runs only to the insurance companies that hired them; to the extent that they are insurance companies; their liability runs only to the insureds named in their policies.

<u>Conclusion</u>

For the foregoing reasons, the Court grants the Motions to Dismiss of Defendants Anchor Solutions Company, Inc. (previously Abacus Service Company, Inc.), V. B. Gifford & Company, Inc., Gresham & Associates of RI, Inc., and Surplex Underwriters, Inc. Consequently Counts 75, 83, 84 and 85 of the Third Amended Master Complaint are dismissed.  No judgments will enter at this time. It is so ordered.

Ronald R. Lagueux
Senior United States District Judge
December 13 , 2006

-10-