UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALBERT L. GRAY, Administrator,
et al., Plaintiffs,

v.                                            C.A. No. 04-312L

JEFFREY DERDERIAN,
et al., Defendants.


ESTATE OF JUDE B. HENAULT,
et al., Plaintiffs,

v.                                            C.A. No. 03-483L

AMERICAN FOAM CORPORATION,
et al., Defendants.


In Re Motions to Dismiss of Defendants Polar Industries, Inc. and Home Depot U.S.A., Inc.


**DECISION AND ORDER**

Ronald R. Lagueux, Senior District Judge.

This matter is before the Court on Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Polar Industries, Inc. ("Polar") and Home Depot U.S.A., Inc. ("Home Depot"). Plaintiffs assert that Polar manufactured PolarGuard brand polystyrene foam insulation which was installed in the Station nightclub in early 2000. Home Depot is alleged to have sold both PolarGuard insulation to Howard Julian (a former owner of the nightclub and a defendant in this case) and Celotex SoundStop board to the Derderians (the owners

of the nightclub at the time of the fire), each of whom then installed the products in the nightclub. For the reasons detailed below, the Court denies the Motions to Dismiss proffered by these two Defendants.

## Background

On February 20, 2003, a deadly fire in West Warwick, Rhode Island, destroyed a nightclub known as the Station. The fire started as the featured rock band, Great White, began its live performance and the club was crowded with spectators, staff and performers. The concert featured stage fireworks, ignited by the band's tour manager as the band took the stage.

According to eyewitnesses, the fireworks created sparks behind the stage which ignited foam insulation materials on the club's ceiling and walls. In minutes, the entire building was on fire and over 400 people were struggling to escape the crowded, dark and smoky space. One hundred people died and over 200 others were injured as a result of the fire.

Numerous lawsuits, both criminal and civil, were filed throughout southern New England in both state and federal courts. The civil lawsuits have been consolidated in this Court, which asserted its original federal jurisdiction based on the Multiparty, Multiforum Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369. See Passa v. Derderian, 308 F. Supp. 2d 43 (D.R.I. 2004). Since that time, this Court has ruled on several motions

to dismiss. Those decisions may be found under the caption <u>Gray v. Derderian</u> at 365 F. Supp. 2d 218 (D.R.I. 2005), 371 F. Supp. 2d 98 (D.R.I. 2005), 389 F. Supp. 2d 308 (D.R.I. 2005), 400 F. Supp. 2d 415 (D.R.I. 2005), 404 F. Supp. 2d 418 (D.R.I. 2005), 448 F. Supp. 2d 351 (D.R.I. 2005), and --- F. Supp. 2d --- , 2006 WL 3616494 (D.R.I. 2006).

In February 2006, Plaintiffs amended their master complaint to add more plaintiffs, and to join additional defendants, including Home Depot and Polar. All claims are now incorporated in a Third Amended Master Complaint ("the Complaint"), which includes claims of over 260 plaintiffs against 97 defendants.

## Standard of Review

Defendants move to dismiss the claims against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. In considering a Rule 12(b)(6) motion, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996).

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff is required simply to make "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). A complaint sufficiently raises a claim as long as relief is possible under any set of facts that

could be established consistent with the allegations. See, e.g., Morales-Vallellanes v. Potter, 339 F.3d 9, 14 (1st Cir. 2003). Rule 8 is meant to ensure that a defendant will have fair notice of the plaintiff's claim and the grounds upon which it rests. LaLonde v. Textron, Inc., 369 F.3d 1, 6-7 (1st Cir. 2004)(citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Despite the fact that the parties make reference in their Motions to materials beyond the Complaint, as has occurred earlier in this case, the Court will focus on the Complaint alone in determining whether the allegations are sufficient to state a claim. See Gray v. Derderian, 365 F. Supp. 2d 218, 223 (D.R.I. 2005).

1. The allegations in the Complaint

   a. Polar

In counts 88-90, Plaintiffs assert three causes of action against Polar in connection with its manufacture and sale of PolarGuard brand polystyrene insulation: negligence, strict liability, and breach of warranty. This PolarGuard insulation, Plaintiffs allege, was installed on the ceiling of the drummer's alcove and elsewhwere in the Station nightclub in early 2000.

In attempting to make out a claim for negligence, Plaintiffs attribute the following negligent acts to Polar:

a. failure to use due care in the manufacture, sale or distribution of the insulation;
b. failure to make or cause to be made reasonable research and/or testing as to the effects of the insulation;

```
c.   failure to otherwise adequately test the insulation before
     providing it, distributing it or selling it;
d.   failure to warn potential and actual users of the product of
     its potential hazards, including but not limited to its
     unsuitability for use as an exposed interior surface without
     proper thermal barrier susceptible to exposure to heat or
     flame;
e.   failure to properly and adequately educate users about the
     use and hazards of the insulation;
f.   failing to provide adequate protection for persons coming
     into contact with the insulation, such as plaintiffs, from
     suffering the injuries which plaintiffs suffered; and
g.   otherwise failing to use due care in the design,
     manufacture, testing, inspecting, marketing[,] advertising,
     labeling, packaging, provision, distribution and/or sale of
     the insulation . . .
```

(Compl. ¶ 744.) These negligent acts, Plaintiffs allege, "constituted a proximate cause of Plaintiff's [sic] injuries and death." (Id.)

With regard to the strict liability count, Plaintiffs incorporate the negligence count allegations and further allege that the PolarGuard insulation was "unreasonably dangerous and otherwise defective . . ." (Id. at ¶ 746.) Moreover, "Plaintiffs had no knowledge of the defective condition of the insulation." (Id. at ¶ 747.) Finally, Plaintiffs claim that the insulation was in substantially the same condition when used as when it left Polar's control, and that it was a proximate cause of Plaintiffs' injuries and deaths.

In alleging breach of warranty, Plaintiffs incorporate the negligence and strict liability allegations, and then simply assert that "Polar breached express and implied warranties of merchantibility and fitness in the manufacture, sale and

distribution of said insulation[,]" and that "[a]s a direct and proximate result of said breach, Plaintiffs suffered death or injuries." (Id. at ¶¶ 751, 752.)

   b. Home Depot

In counts 91-93, Plaintiffs make the same three charges against Home Depot. It is alleged that PolarGuard brand polystyrene insulation and Celotex SoundStop board were purchased at Home Depot sometime in 2000. Plaintiffs then allege that both of these products were installed on the ceiling of the drummer's alcove and elsewhere in the Station nightclub.

Plaintiffs posit that Home Depot "owed a duty to ultimate users of, or persons exposed to, said insulation, and/or board including Plaintiffs, in testing, inspecting, marketing, producing, selling or distributing the insulation and/or board." (Compl. ¶ 756.) Aside from the inclusion of the Celotex SoundBoard, the allegations concerning Home Depot's negligence, as well as those charging strict liability and breach of warranty, are exact duplicates of the allegations against Polar.

2. Analysis

   a. Negligence

As this Court has previously noted, to establish negligence in Rhode Island, Plaintiffs must show that 1) Defendants owed them a legal duty to refrain from negligent activities; 2) Defendants breached that duty; 3) the breach proximately caused

Plaintiffs' injuries; and 4) actual loss or damages resulted. Gray v. Derderian, 365 F. Supp. 2d 218, 226 (D.R.I. 2005)(citing Splendorio v. Bilray Demolition Co., 682 A.2d 461, 466 (R.I. 1996)).

Polar's principal response to Plaintiffs' negligence claim is that it did not owe a legal duty to Plaintiffs, that Plaintiffs have not adequately alleged it knew or should have known about its product's defects, and that Plaintiffs cannot establish that its negligence was the proximate cause of Plaintiffs' harm. Home Depot similarly claims it owed no duty of due care to Plaintiffs, that Plaintiffs have not alleged that Home Depot knew or should have known about the two products' defects, and that Plaintiffs' injuries were not proximately caused by Home Depot's sale of the foam and soundboard. The Court will address these arguments in turn.

### i. Polar: Duty of Care

The test for the sufficiency of an allegation of a duty of care is the same as it is for any element of a theory of recovery. That is, in order to adequately allege a duty of care, a Plaintiff need not establish that such a duty existed, but rather must simply set forth facts sufficient to give notice of the nature of the charge and the basis for it. LaLonde v. Textron, Inc., 369 F.3d 1, 6-7 (1st Cir. 2004)(citing Conley v. Gibson, 355 U.S. 41, 47 (1957)); St. James Condo. Ass'n v. Lokey,

676 A.2d 1343, 1347 (R.I. 1996).

In this case, Plaintiffs allege that early in 2000, Julian bought PolarGuard brand polystyrene insulation, which he then installed in the drummer's alcove and elsewhere in the Station nightclub. (Compl. ¶ 742.) Plaintiffs then assert that a duty of care bound Polar to "ultimate users of, and persons exposed to, its insulation products . . . ." (Compl. ¶ 743.) It appears Plaintiffs allege that this duty was breached primarily by Polar's failure to warn users of its product's "unsuitability for use as an exposed interior surface without proper thermal barrier susceptible to exposure to heat or flame . . . ." (Compl. ¶ 744(d).)

As is plain, Plaintiffs' pronouncement that a duty of care existed certainly does not establish that point. Yet, the allegations against Polar make sufficient reference to the danger of its product and the foreseeability of its use as building insulation that Polar is adequately advised of the parameters of the cause of action it faces. Indeed, because the allegations specify the time period in which the foam was purchased, the nature of its use in the Station nightclub, and the potential hazard of the foam, Polar has been sufficiently notified of the nature of the claim against it and the basis for it. Accordingly, Polar's Motion to Dismiss based on a failure to adequately allege duty of care is denied.

### ii. Home Depot: Duty of Care

Plaintiffs' allegations that Home Depot owed them a duty of care are just as perfunctory as the allegations pertaining to Polar. Plaintiffs assert that sometime in 2000, Home Depot sold Julian the PolarGuard brand polystyrene insulation and the Derderians the Celotex SoundStop board, and that both products were installed in the ceiling of the drummer's alcove and elsewhere in the Station nightclub. (Compl. ¶¶ 754, 755.) Plaintiffs then simply state, as they did in the Polar negligence charge, that Home Depot "owed a duty to ultimate users of, or persons exposed to, said insulation, and/or board including Plaintiffs . . . ." (Compl. ¶ 756.)

Plaintiffs' allegations against Home Depot are ordinary charges of retailer negligence in selling a defective product. As with the allegations against Polar, the Court sees no need for more detailed allegations of a duty of care when all that is required is a simple statement of the claim, sufficient to give the defendant notice of the nature of the claim and the basis for it. Plaintiffs' allegations achieve that modest goal of notice pleading, and therefore survive Home Depot's Motion to Dismiss as to the duty of care element.

### iii. Polar: Duty to Warn

As part of their negligence claim, Plaintiffs allege that Polar failed "to warn potential and actual users of the product

of its potential hazards, including but not limited to its unsuitability for use as an exposed interior surface without proper thermal barrier susceptible to exposure to heat or flame . . . ." (Compl. ¶ 744(d).) Polar complains that because Plaintiffs have not alleged explicitly that its product was dangerous or that it knew or had reason to know of such danger, their allegations concerning negligent failure to warn are inadequate and must be dismissed.

In Rhode Island, a defendant's duty to warn is established by a showing that he knew or should have known about a product's dangerous propensities which caused plaintiff's injuries. Raimbeault v. Takeuchi Mfg. (U.S.), Ltd., 772 A.2d 1056, 1063-64 (R.I. 2001). At this stage of the proceedings, however, Plaintiffs are not expected or required to establish such facts. As Plaintiffs point out, a complaint "need not plead law or match facts to every element of a legal theory." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000). "Vagueness, lack of detail, conclusionary statements, or failure to state facts or ultimate facts, or facts sufficient to constitute a cause of action are no longer fatal defects." Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002).

Here, Plaintiffs' failure to allege specifically that Polar knew or had reason to know its product had dangerous propensities which would lead to Plaintiffs' injuries is not a fatal defect.

-10-

Assuming all allegations to be true and drawing all reasonable inferences in favor of Plaintiffs, the Court concludes that adequate notice has been given to Polar in Plaintiffs' Complaint that Polar is accused of negligence in its failure to warn users of its product's defect, even without a specific allegation that it knew or should have known of that defect.

Polar asserts that something crucial is missing from the Complaint because Plaintiffs pled with greater particularity against the polyurethane and polyethylene foam manufacturers than they did against Polar. Specifically, Polar points to the lack of allegations that its product was extremely flammable, that it burned too quickly and with more toxicity than other materials, or that there were known "high risk" applications of the product.

The Court agrees with Plaintiffs that comparing allegations among co-defendants cannot be the standard for dismissal pursuant to Rule 12(b)(6). The allegations against each defendant must be tested for sufficiency individually. As noted above, the rules of notice pleading do not require each element of a legal theory to be supported by factual allegations. From the allegations against Polar, it is fairly inferable that Plaintiffs contend that its product was flammable and unsafe along the same lines as the other foam products. Whether one kind of foam is more flammable, more toxic, or more likely to be the "primary fuel load" of the fire is the kind of factual inquiry beyond the

parameters of a test of the pleadings. The Court is satisfied that Polar has received sufficient notice of the nature of the negligent failure to warn claim and thus the allegations survive a motion to dismiss.

### iv. Home Depot: Duty to Warn

The allegations against Home Depot in Count 91 charge the retailer with, *inter alia*, failure to test the insulation and/or board before selling it, and "failure to warn potential and actual users of the product(s) of its (their) potential hazards, including but not limited to its (their) unsuitability for use as an exposed interior surface without proper thermal barrier susceptible to exposure by heat or flame . . . ." (Compl. ¶ 757(d).)

Home Depot argues, just as Polar does, that because Plaintiffs have not alleged that Home Depot knew or had reason to know that the insulation and board were unsafe, their allegations are deficient and must be dismissed. As the Court has explained above, Plaintiffs are not required at this stage of the case to establish all of the elements of the cause of action they have initiated. There is enough in the allegations to give Home Depot sufficient notice of the nature of and basis for Plaintiffs' failure to warn claim.

Home Depot half-heartedly raises the "common knowledge" doctrine as a defense against failure to warn liability. Home

Depot asks this Court to take judicial notice of the fact that "materials will burn in the path of a spreading fire." (Home Depot Mem. Supp. Mot. Dismiss 10.) While this Court cannot argue with that proposition, that question is not at issue here. The Court's sole focus at present is whether the materials Home Depot sold were so widely known to be dangerous in the way alleged that that fact could be considered common knowledge. While Home Depot cites to two decisions as models for dismissing failure to warn cases against a retailer selling flammable products, Brech v. J. C. Penney Co., Inc., 532 F. Supp. 916 (D.S.D. 1982) and Coleman v. Cintas Sales Corp., 100 S.W.3d 384 (Tex. App. 2002), these cases are inapposite. Each concerns the flammability of clothing and resolves the issue at either the summary judgment or post-trial phase, where the factual record has been developed. The Court is simply in no position to rule on facts at this stage in the proceedings, nor has Home Depot offered sufficient evidence and argumentation to support a request that the Court take judicial notice of the flammability of PolarGuard foam insulation and Celotex SoundStop board. Accordingly, the Court denies Home Depot's request to dismiss Plaintiffs' negligence count for deficiencies in the failure to warn allegations.

### v. Polar: Proximate Cause

In its final attack on the negligence pleadings, Polar contends that Plaintiffs' allegations do not establish the

required causal nexus between Polar's acts and Plaintiffs' injuries. As one sign that Plaintiffs' allegations are deficient, Polar indicates that none of the facts relied on by the Court in its determination of the polyurethane foam defendants' motion to dismiss have been alleged against Polar's product. Polar then further contends that intervening negligent acts by third parties broke the causal chain between its conduct and the Plaintiffs' injuries and thus relieve it of liability.

As this court has earlier noted, proximate cause is the legal phrase used to describe the connection between defendant's negligence and plaintiff's injury. Gray, 365 F. Supp. 2d at 229 (citing Peycke v. United Elec. Rys. Co., 142 A. 232 (R.I. 1928)). Proximate cause can be established by showing that "but for" the negligence of the defendant, plaintiff's injuries would not have occurred. Gray, 365 F. Supp. 2d at 229-30 (citing Skaling v. Aetna Ins. Co., 742 A.2d 282, 288 (R.I. 1999). Rhode Island also recognizes that "the negligence of a third party intervening between the defendant's negligence and the damage breaks the causal connection between the two." Gray, 365 F. Supp. 2d at 230 (quoting Mahogany v. Ward, 17 A. 860, 861 (R.I. 1889)).

The question of whether proximate cause exists is normally one for the fact finder to resolve. Geloso v. Kenny, 812 A.2d 814, 818 (R.I. 2002). "It is only when the facts are undisputed and are susceptible of but one inference, that the question is

one of law for the court." Id. (citing Schenck v. Roger Williams Gen. Hosp., 382 A.2d 514, 518 (R.I. 1977). However, as these cases illustrate, even when the question is one of law for the court, it is ripe for decision only at the summary judgment or post-trial phase of the proceedings, when the factual record has been fully developed. The Geloso case is typical; at trial, the judge granted defendant's motion for judgment as a matter of law after ruling that there was insufficient evidence of proximate cause submitted at trial, even when considered in the light most favorable to plaintiff. 812 A.2d at 818. The Rhode Island Supreme Court reversed, relying on the factual record developed at trial. Id.

When the procedural posture of a case is a motion to dismiss pursuant to Rule 12(b)(6), the requirements for alleging causation are no more stringent than they are for any other element of a legal theory. That is, the plaintiff must only give sufficient notice of his claim and the basis for it. Polar contends that this Court, in denying the polyurethane foam Defendants' motion to dismiss, pointed to more extensive allegations in the Complaint. That observation misses the point. The allegations being made here against Polar give adequate notice of the claim, although those allegations are not as detailed as those made against the other foam Defendants. The Court is satisfied that even though proximate causation has yet

to be factually established, the possibility of achieving that end has not been extinguished. Plaintiffs' allegations sufficiently advise Polar that the issue of proximate cause will be an area in which to do battle at a later phase in this litigation.

Moreover, this Court has previously ruled that, assuming the facts to be as pled by Plaintiffs, "no act in the series of events leading up to the Station tragedy stands alone as the sole and proximate cause of the fire." Gray, 365 F. Supp. 2d at 233. Rather, the Court has determined that the intervening acts of other defendants, so far as the facts have been alleged, can constitute "concurring proximate causes," as defined by the Rhode Island Supreme Court in Hueston v. Narragansett Tennis Club, Inc., 502 A.2d 827, 830 (R.I. 1986). Gray, 365 F. Supp. 2d at 232. The alleged acts of Polar in manufacturing and distributing an allegedly hazardous product cannot be said to be so remote or removed from Plaintiffs' injuries as to allow the charges of negligence against it to be dismissed. Accordingly, Polar's Motion to Dismiss the negligence count is denied.

### vi. Home Depot: Proximate Cause

Home Depot echoes Polar's argument that intervening acts by third parties broke the causal chain connecting Home Depot's allegedly negligent conduct and Plaintiffs' injuries. Specifically, Home Depot points to the dangerousness of the

polyurethane foam, the illegal pyrotechnic display, and the overcrowding of the club as independent causes of the fire, rendering the role of the insulation and sound board superfluous to the consequent tragedy. The Court determines, as with Polar's protests, that it is too early to determine whether Home Depot's conduct is a concurring proximate cause of Plaintiffs' injuries. As things stand, while proximate causation has yet to be established by Plaintiffs, the possibility of establishing it has not been extinguished and, at this stage of the proceedings, Plaintiffs' allegations sufficiently give Home Depot notice of the nature of the claim and its basis.

### b. Strict Liability

#### i. Polar

As in its arguments for dismissal of the negligence count, Polar contends that Plaintiffs' allegations of strict liability are deficient in that they are missing the details supplied in the allegations against the polyurethane foam Defendants. Polar also reasserts its argument that Plaintiffs have failed to show proximate cause that connects its product to Plaintiffs' injuries.

A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. Gray, 365 F. Supp. 2d at 234 (quoting

Ritter v. Narragansett Elec. Co., 283 A.2d 255, 262 (R.I. 1971)). In order to establish liability, the defect in the design or manufacture must make the product unsafe for its intended use, and plaintiff must be using the product as intended when the injury occurs. Gray, 365 F. Supp. 2d at 234 (citing Ritter, 283 A.2d at 262).

The requirements of a strict products liability claim overlap significantly those of a negligence claim, with the difference residing in a negligence claim's additional requirement that the defendant knew or had reason to know of the product's defect. Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 268 (D.R.I. 2000)(citing Ritter v. Narragansett Elec. Co., 283 A.2d 255, 259 (R.I. 1971)). While Plaintiffs' allegations for the strict liability count are certainly bare bones, they do incorporate the allegations made in the negligence count, and it is clear from those assertions what the alleged defect is: "unsuitability for use as an exposed interior surface without proper thermal barrier susceptible to heat or flame . . . ." (Compl. ¶ 744(d).) Having determined the sufficiency of the negligence allegations above, the Court must conclude that the strict liability allegations are adequate.

### ii. Home Depot

Like Polar, Home Depot again points to the more elaborate allegations against the polyurethane defendants as an indicator

of the deficiencies of the allegations charging it with strict products liability. Also like Polar, Home Depot reiterates its position that Plaintiffs have not shown proximate cause. Home Depot diverges from Polar's position only to reassert its "common knowledge" defense. The Court has already made it clear that these arguments fail in light of Plaintiffs' short and plain statement of the claim. Accordingly, Home Depot's Motion to Dismiss the strict liability count is denied.

c. Breach of Warranty

In Counts 90 and 93, Plaintiffs charge Polar and Home Depot with breach of warranty for supplying the PolarGuard polystyrene foam and the Celotex SoundStop board. These counts incorporate the allegations asserted in the negligence and strict liability counts, and are otherwise bare of factual details.

As noted in this Court's decision concerning the polyurethane foam Defendants, in order to establish liability for breach of warranty, a plaintiff must show that the product is defective, that the defect was present when the product left the defendant's hands, and that the defect is the proximate cause of plaintiff's injuries. Gray, 365 F. Supp. 2d at 239 (citing Plouffe v. Goodyear Tire & Rubber Co., 373 A.2d 492, 495 (R.I. 1977)).

Polar and Home Depot have thoroughly set out their arguments concerning the purportedly weak allegations of product defect and

proximate cause set forth by Plaintiffs, but these contentions have already been found wanting by the Court. Because the elements of breach of warranty contain the elements required of a negligence claim, and Plaintiffs incorporate the negligence and strict liability allegations into the breach of warranty charge, the sufficiency of those pleadings as determined above applies to these counts. The Court concludes that the allegations give fair notice of the claim against Defendants and a basis for recovery. Therefore, the Motions to Dismiss the breach of warranty counts against Polar and Home Depot are denied.

## Conclusion

For the foregoing reasons, the Court denies the Motions to Dismiss asserted by Defendants Polar Industries, Inc. and Home Depot U.S.A., Inc.

It is so ordered.

_/s/ Ronald R. Lagueux_
Ronald R. Lagueux
Senior United States District Judge
February 6, 2007