UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


ALBERT L. GRAY, Administrator, et al.,   :
                        Plaintiffs,      :
                                         :
            vs.                          :      CA 04-312L
                                         :
JEFFREY DERDERIAN, et al.,               :
                        Defendants.      :




ESTATE OF JUDE B. HENAULT, et al.,       :
                        Plaintiffs,      :
                                         :
            vs.                          :      CA 03-483L
                                         :
AMERICAN FOAM CORPORATION, et al.,       :
                        Defendants.      :



**MEMORANDUM AND ORDER
RE PLAINTIFFS' MOTIONS FOR DISCOVERY
IN RESPONSE TO CLEAR CHANNEL'S MOTION FOR SUMMARY JUDGMENT**

    Before the Court are two motions:

    1. Gray Plaintiffs[1] Initial Response, Pursuant to the
Notice and Order of this Court of February 8, 2007, to the Motion
for Summary Judgment of Capstar Radio Operating Company (A
Successor in Interest to WHJY, Inc.) and Clear Channel
Broadcasting, Inc.[2] (Gray Doc. #1293) ("Gray Plaintiffs' Motion
for Discovery");[3]

_____

    [1] All plaintiffs represented by counsel in the Gray and
Napolitano actions as indicated by signatures of counsel.

    [2] Capstar Radio Operating Company, WHJY, Inc., WHJY-FM, and Clear
Channel Broadcasting, Inc., are hereinafter referred to as "Clear
Channel" or "the Clear Channel Defendants."

    [3] The Gray Plaintiffs' Motion for Discovery (Gray Doc. #1293) has
been joined and adopted by: all Plaintiffs in Guindon, et al. v.

2.  Henault Plaintiffs'[4] Initial Response to the Motion for Summary Judgment of Capstar Radio Operating Company (A Successor in Interest to WHJY, Inc.) and Clear Channel Broadcasting, Inc., Pursuant to the February 8, 2007, Notice and Order of This Court (<u>Gray</u> Doc. #1307)(<u>Henault</u> Doc. #769) ("Henault Plaintiffs' Motion for Discovery").

The following objections to the motions have been filed:

A.  Objection of Daniel Biechele to Motion for Discovery Filed in Response to Capstar's Motion for Summary Judgment (<u>Gray</u> Doc. #1313)(<u>Henault</u> Doc. #774) ("Biechele Objection");

B.  Defendant McLaughlin & Moran, Inc.'s Objection to Plaintiffs'[] Initial Response to Defendant Clear Channel Broadcasting, Inc.'s Motion for Summary Judgment (<u>Gray</u> Doc. #1314)(<u>Henault</u> Doc. #773) ("McLaughlin & Moran Objection");

---

<u>American Foam, et al.</u>, C.A. 03-335L, <u>Roderiques, et al. v. American Foam, et al.</u>, C.A. 04-26L, and <u>Sweet, et al. v. American Foam, et al.</u>, C.A. 04-56L, <u>see</u> Gray Plaintiffs' Initial Response to the Motion for Summary Judgment of Capstar Radio Operating Company (A Successor in Interest to WHJY, Inc.) and Clear Channel Broadcasting, Inc., Pursuant to the February 8, 2007, Notice and Order of this Court (<u>Gray</u> Doc. #1317); and all Plaintiffs in <u>Tammy Passa, et al. v. Jeffrey Derderian, et al.</u>, C.A. 03-148L, <u>Ronald Kingsley, et al. v. Jeffrey Derderian, et al.</u>, C.A. 03-208L, and <u>Andrew Paskowski, et al. v. Jeffrey Derderian, et al.</u>, C.A. 05-002L, <u>see</u> Plaintiffs'[] Initial Response to the Motion for Summary Judgment of Capstar Radio Operating Company (A Successor in Interest to WHJY, Inc.) and Clear Channel Broadcasting, Inc., Pursuant to the February 8, 2007 Order of this Court (<u>Gray</u> Doc. #1308).

[4] Estate of Jude B. Henault by Chad M. Henault and Angela Boggs, Co-Administrators; Angela Boggs, Individually, Rachael M. Henault, ppa Chad M. Henault; Andrew J. Henault ppa Chad M. Henault; Estate of Samuel A. Miceli, Jr., by Madeliene P. Miceli, Administrator; Estate of Melvin A. Gerfin, Jr., Deborah A. Gerfin and Laura Gerfin, Co-Administrators, Deborah A. Gerfin, Individually, Laura Gerfin, Individually, Kelly Gerfin ppa Deborah Gerfin, Meagan Gerfin ppa Deborah Gerfin; Caroline Telgarsky, Administrator of the Estate of Sarah Jane Telgarsky, and Sarah Jane Ballard, Individually; Glenn Johnson; Lisa Johnson; Melanie Holiday; Nancy Noyes; Katrina Kolasa (C.A. No. 05-070); David Malagrino (C.A. No. 06-002); William Long (C.A. No. 06-047).

C.  Defendants'[5] Objection to Plaintiffs' Initial Response Regarding the Clear Channel Defendants' Motion for Summary Judgment (<u>Gray</u> Doc. #1323)(<u>Henault</u> Doc. #777) ("Jack Russell Defendants' Objection");

D.  Defendants'[6] Objection to Gray Plaintiffs' Initial Response to the Motion for Summary Judgment of Capstar Radio Operating Company (As Successor-in-Interest to WHJY, Inc.) and Clear Channel Broadcasting, Inc.[7] (<u>Gray</u> Doc. #1324)(<u>Henault</u> Doc. #778) ("Clear Channel Objection").

A hearing on the motions was conducted on June 13, 2007. Thereafter, the Court took them under advisement.

### Background

On February 1, 2005, Senior Judge Ronald R. Lagueux entered the Interim Scheduling Order (<u>Gray</u> Doc. #318)(<u>Henault</u> Doc. #198) in the Station fire cases.  The order provided in paragraph 3

---

[5] Jack Russell, Jack Russell Touring, Inc., Mark Kendall, David Filice, Eric Powers, Paul Woolnough, Manic Music Management, Inc., and Knight Records, Inc.

[6] Capstar Radio Operating Company, as successor-in-interest to WHJY, Inc., formerly a Rhode Island corporation that operated WHJY-FM (collectively "WHJY"), and Clear Channel Broadcasting, Inc. (together with WHJY, the "Clear Channel Defendants").

[7] This Objection is directed towards all plaintiffs who have asserted claims against any or all of the Clear Channel Defendants, and who have joined in the <u>Gray</u> plaintiffs' "Initial Response," in the following cases: <u>Gray, et al. v. Derderian, et al.</u>, C.A. No. 04-312L; <u>Estate of Henault, et al. v. American Foam Corp., et al.</u>, C.A. No. 03-483L; <u>Passa, et al. v. Derderian, et al.</u>, C.A. No. 03-148L; <u>Kingsley, et al. v. Derderian, et al.</u>, C.A. No. 03-208L; <u>Paskowski, et al. v. Derderian, et al.</u>, C.A. No. 05-002L; <u>Guindon, et al. v. American Foam Corp., et al.</u>, C.A. No. 03-335L; <u>Sweet, et al. v. American Foam Corp., et al.</u>, C.A. No. 04-056L; <u>Roderiques, et al. v. American Foam Corp., et al.</u>, C.A. No. 04-026L; <u>Napolitano, et al. v. Derderian, et al.</u>, C.A. No. 06-080L; <u>Kolasa v. American Foam Corp., et al.</u>, C.A. No. 05-070L; <u>Malagrino v. American Foam Corp., et al.</u>, C.A. No. 06-002L; and <u>Long v. American Foam Corp.</u>, C.A. No. 06-47L.

that "[a]fter adjudication of all Responsive Motions[8] ... any
defendant ... may file summary judgment motions, as necessary
('Initial Summary Judgment Motions')."  Interim Scheduling Order
¶ 3.  Paragraph 4 of the order directed that "[w]ithin 30 days
after the filing of an initial Summary Judgment Motion,
plaintiffs shall identify, pursuant to F.R.Civ.P. 56(e) and (f),
the material facts they believe to be at issue and the discovery
requested to object to that specific motion."  Id. ¶ 4.  The
provisions of paragraphs 3 and 4 were activated by Judge Lagueux
on February 8, 2007.  See Notice and Order (Gray Doc. #1141)
(Henault Doc. #621) at 1.  The Notice and Order established a
timetable for the filing of initial motions for summary judgment
and for plaintiffs to identify the material facts they believe to
be at issue and the discovery requested to object to those
motions.  See id. at 2-3.

On April 9, 2007, in accordance with the Notice and Order,
Clear Channel filed a motion for summary judgment.  See
Defendants'[] Motion for Summary Judgment[] (Gray Doc. #1245)
(Henault Doc. #707) ("Clear Channel's Motion for Summary
Judgment").  The instant Gray Plaintiffs' Motion for Discovery
was filed on May 8, 2007, and the Henault Plaintiffs' Motion for
Discovery was filed on May 21, 2007.  On May 23, 2007, the
Biechele Objection and the McLaughlin & Moran Objection were
filed.  The Jack Russell Defendants Objection and the Clear
Channel Objection were filed on June 6, 2007.

### Discovery Requested

The Gray and Henault Plaintiffs seek the following
discovery:

---

[8] "Responsive Motions" are defined in the Interim Scheduling
Order as "motions to dismiss, notices of adoption of previously filed
motions to dismiss, and other responsive motions ...."  Interim
Scheduling Order (Gray Doc. #318)(Henault Doc. #198) ¶ 1.

4

(1)   Deposition testimony and probative documents of those witnesses whose limited testimony is provided by Clear Channel in support of its motion in Exhibits 1-40 to its Appendix to its Statement of Undisputed Facts.[9]

(2)   Rule 30(b)(6) Deposition of Clear Channel – WHJY in the following general categories, including production of documents relevant to these categories:

(a)   Clear Channel's protocols and guidelines for participation in, support of and control over live entertainment events that it chose to promote, sponsor or advertise.   Such inquiry would include Clear Channel's:

- use of contractual forms, as well as its policies or procedures granting corporate permission to participate in such events;

- rules, internal protocols and guidelines for such participation;

- restrictions prohibiting participation in an illegal or hazardous event;

- guidelines for Clear Channel's grant of the use of its (or its local station's) name, contribution of funds, personnel or services, use of its logo and its goodwill in association with such event; and the manner in which any internal review process addresses these policies, either at the local station or Clear Channel corporate[] level;

- Identification of the positions and identities of the individuals upon whose approval participation in such events depend, both at the local station and corporate level; and

_____

[9] In a supplement filed on June 29, 2007, the Gray Plaintiffs identify "26 non-plaintiff individuals ... whose depositions plaintiffs request the opportunity to take ...."  Gray Plaintiffs[] Supplement to Their Initial Response to Motion for Summary Judgment of Capstar Radio Operating Company (A Successor in Interest to WHJY, Inc.) and Clear Channel Broadcasting, Inc. (<u>Gray</u> Doc. #1450) ("Gray Plaintiffs' Supplement to Motion for Discovery") at 2-3.

- those factors which are considered that allow a Clear Channel station to decide whether or not it will participate in such an event, including analysis of potential legal liability and public safety factors.

(b) Clear Channel's actual involvement in, control over, and/or right to control the Great White performance of February 20, 2003, at the Station nightclub.
Such inquiry would include identification of and testimony regarding:

- oral as well as written agreements relating to the promotion, sponsorship or performance with any person or entity, and identification of relevant documents, and of the individuals involved and the specifics of their participation;

- Clear Channel's prior knowledge of:

  ○ Great White;

  ○ The Great White Tour;

  ○ Great White's prior use of pyrotechnics;

  ○ The Station;

  ○ The Station's occupancy limits;

  ○ The Station's safety;

  ○ Existence of pyrotechnic permitting requirement; and

  ○ The performance's legality.

- The protocol or procedure employed by Clear Channel to insure that Clear Channel would not knowingly participate in, sponsor, promote or support an illegal or unduly hazardous event;

6

- The protocol or procedure employed by Clear Channel to inform itself of Great White's activities on its tour prior to February 20, 2003, including the information regarding any unlawful pyrotechnic use given to, or known by, a Clear Channel Station.

- The creation, supply and use at The Station of a promotional banner inviting the public to "party with WHJY and Budweiser" including:

  - What message the banner intended to convey;

  - Who at Clear Channel authorized or ratified the use of the banner and WHJY's name;

  - What level of endorsement or sponsorship Clear Channel or its station understood would be communicated to the public by use of the banner;

  - Whether Clear Channel gave any consideration to whether the use of its radio station's apparent endorsement would convey any sense of safety or legitimacy to a patron considering whether or not to enter the venue.

(c) Clear Channel's control of its employee Mike Gonsalves in connection with all activities related to the performance and its promotion.[1]

- Clear Channel's knowledge of Gonsalves' role would include inquiry into the following:

  - Clear Channel's decision to allow Gonsalves to appear at The Station;

  - knowledge that Gonsalves was the station's expert in Great White's type of music and type of

7

performance;

○  Gonsalves' participation in the
   decision to involve WHJY at this
   venue and this event;

○  Gonsalves' knowledge regarding the
   use of pyrotechnics at this type of
   event by this type of band and in
   the industry in general;

○  Gonsalves' knowledge of the prior
   use of pyrotechnics on this tour by
   Great White;

○  Gonsalves' knowledge of Great
   White's use of pyrotechnics and
   their previous use in this venue;

○  Gonsalves' knowledge, in connection
   with his role as Master of
   Ceremonies for this event, of the
   regulation of pyrotechnics according
   to state law at time of use and not
   sale;

○  Gonsalves' and Clear Channel's
   knowledge prior to the performance
   that Great White was using
   pyrotechnics on this tour and had
   disclosed this fact on other Clear
   Channel radio stations including
   WTOS-FM in Bangor, Maine.[]

○  Gonsalves' and Clear Channel's
   knowledge, directly obtained from
   Jack Russell on a WHJY interview on
   2/19/03, the day prior to the
   performance at The Station, that the
   band intended to use pyrotechnics;

○  Gonsalves' ability, as Master of
   Ceremonies, to determine whether
   Great White's use of pyrotechnics
   was illegal or unduly hazardous in
   the context of this event.

(d)  Clear Channel's and Mike Gonsalves' knowledge

8

on the stage at The Station on February 20, 2003 just prior to Great White's concert, including:

- The understanding that Gonsalves was there acting as a Master of Ceremonies and what this term meant in the context of the event.[]

- Whether Gonsalves had the authority to delay the introduction of the band or the timing of that introduction, and whether Gonsalves controlled the stage by virtue of his presence on it;

- Whether Gonsalves had the authority and ability to visually inspect for readiness for the concert to begin;

- Whether just prior to the concert there was a period of darkness during an interlude between band

- Whether Gonsalves as Master of Ceremonies was on the stage and/or in control of it during the period of time when the pyrotechnics were introduced;

- Whether Gonsalves had the authority to inquire as to the nature, licensing and safety of pyrotechnics or to any other question about objects introduced onto the stage that raised a concern of danger of harm or illegal activity.[]

- Whether Clear Channel expected that its employee, Michael Gonsalves acting as Master of Ceremonies would not knowingly participate in, introduce or encourage an illegal act without making minimal inquiry as to safety or legality;

- Whether Clear Channel expected that in his role as Master of Ceremonies Gonsalves would be sober and alert;

- Whether Gonsalves had the authority to order that the lights be brought up, that

9

the performance be halted or delayed, or that other cautionary steps be taken if Gonsalves as Master of Ceremonies became aware of any unreasonable danger to the patrons or performers on the stage, including the ignition of a fire in the club either on or off the stage.[]

- Whether Gonsalves had the authority to use his microphone and his position on the stage to make inquiry as to or to respond to any such unreasonable danger.

- Whether Gonsalves, while on the stage and just prior to introducing what he understood to be an act that included the use of pyrotechnics, knew that there was no fire watch, no fire extinguishers present, no legal permits for pyrotechnics, and no sprinkler system.

- Whether during the period of darkness that preceded the introduction of Great White that The Station [sic], its owners and employees had given up control of the stage, during that period, to both band and to Gonsalves as the Master of Ceremonies who would introduce the band and begin the performance.

(e) Inquiry of Clear Channel of post fire policies and procedures for participation, sponsorship and promotion of live entertainment events, to include:

- Whether Clear Channel and its stations now have written guidelines which delineate the particular circumstances under which Clear Channel or its radio stations will participate in, sponsor or promote events in which illegal or unduly hazardous activities will occur.

- The method and manner by which Clear Channel now clearly asserts or abrogates control of such activities in its relationship with its vendors, venues or performing artists.

(3) Deposition testimony of participants in or witnesses to the event, the promotion, or of prior tour performances who would be expected to have relevant information regarding issues of pyrotechnic use and control, including:

- McLaughlin & Moran representatives.

- Great White band members and tour employees, including Jack Russell, Daniel Biechele, and others.

- Owners and employees of The Station, including Jeffrey and Michael Derderian and their employees.

- Persons with knowledge of Jack Russell's interview with Gonsalves, on WHJY, on 2/10/03 disclosing intended pyrotechnic use.

- Owners, employees and others with factual knowledge of Great White's prior tour performances and pyrotechnics use.[10]

Gray Plaintiffs' Motion for Discovery at 5-12.[11]

## Discussion

### A.  Biechele Objection

Biechele requests that the Court enter a protective order precluding Plaintiffs from deposing him.  See Memorandum in

---

[10] In their June 29, 2007, supplement, the Gray Plaintiffs identify by name additional persons whom they seek authority to depose "to adduce relevant information regarding pyrotechnic use and issues of control ...." Gray Plaintiffs' Supplement to Motion for Discovery (Gray Doc. #1450) at 3.  The persons so identified are: Paul Vanner, David Stone, Douglas Bardsley, Donna Cormier, Robert Grasso, Jeffrey McNally, Chris Rush, and Alexander Gray.  Id.  The Gray Plaintiffs also state in their supplement that additional individuals with potentially relevant information may be identified in the course of these depositions.  See id.  They request the opportunity to depose such persons.  See id. at 3-4.

[11] The Henault Plaintiffs join and adopt the Gray Plaintiffs' Motion for Discovery.  See Henault Plaintiffs' Motion for Discovery (Gray Doc. #1307)(Henault Doc. #769).

Support of Objection of Daniel Biechele to Motion for Discovery
Filed in Response to Capstar's Motion for Summary Judgment
("Biechele Mem.") at 9.   Although he acknowledges that he "has
resolved all pending criminal charges in the state of Rhode
Island ...," id. at 7, Biechele argues that "the possibility of a
federal prosecution remains open," id.

At the present time, the protective order which Biechele
seeks is unnecessary because Judge Lagueux's order of March 29,
2005, staying all discovery against him remains in effect.   See
Order Granting Defendant Daniel Biechele's Motion for Protective
Order (Gray Doc. #400) ("Order of 3/29/05").   While motions to
lift that stay have been filed, see, e.g., Plaintiffs[1] Motion to
Lift Stay of Discovery as to Defendant Daniel M. Biechele
(Henault Doc. #781); Gray Plaintiffs[1] Motion to Vacate Stay of
Discovery as to Defendant Daniel M. Biechele (Gray Doc. #1469),
those motions have been referred to this Magistrate Judge for
determination.   Accordingly, the Court deems it best to consider
Biechele's arguments at the time of the hearing on the motions to
lift the stay.   That hearing will be scheduled in the near
future, and there is no reason to delay ruling on the instant
motions because of Biechele's objection.   However, so that there
is no confusion, notwithstanding any other ruling contained in
this Memorandum and Order, discovery against Biechele remains
stayed so long as Judge Lagueux's Order of 3/29/05 remains in
effect.

## B.   McLaughlin & Moran Objection

McLaughlin & Moran notes that it has filed its own motion
for summary judgment and that it anticipates that Plaintiffs will
file a separate request for discovery directed at that motion.
See Defendant McLaughlin & Moran, Inc.'s Memorandum in Support of
Objection to Plaintiffs'[1] Initial Response to Defendant Clear
Channel Broadcasting, Inc.'s Motion for Summary Judgment

12

("McLaughlin & Moran Mem.") at 1.  In the interim, McLaughlin & Moran states that its objection is filed "to request that any depositions or discovery of its representatives or that might bear on its motion be subject to appropriate, reasonable limitations and participation by McLaughlin & Moran's counsel." Id. at 1-2.  The Court considers this objection to be pro forma and to require no further discussion.

## C.  Jack Russell Defendants Objection

In their objection the Jack Russell Defendants request that the "Court defer any ruling regarding the scope of their deposition testimony and any other discovery to be directed towards them until after all of Plaintiffs' Rule 56(e) and (f) discovery proposals have been filed."  Jack Russell Defendants Objection at 1.  In support of this request, the Jack Russell Defendants make four points.  First, they note that Jack Russell has continually asserted his privilege against self-incrimination and that he will reassert it "as appropriate under the law in response to the Plaintiffs' discovery requests, including his deposition."  Defendants'[1] Memorandum in Support of their Objection to Plaintiffs' Initial Response Regarding the Clear Channel Defendants' Motion for Summary Judgment ("Jack Russell Defendants Mem.") at 2.  Relatedly, they assert that Plaintiffs must state more specifically their intended areas of inquiry at Mr. Russell's deposition and suggest that the Court "require detailed briefing and argument from the parties to resolve all issues relevant to Mr. Russell's assertion of his privilege against self-incrimination."  Id. at 2.  Second, they call for Plaintiffs to "identify specifically their intended deponents among (1) 'participants' or 'witnesses' regarding 'issues of pyrotechnic use and control' and (2) 'others' who were Great White band members and tour employees."  Id.  Third, the Jack Russell Defendants note that three of them, Mark Kendall, David

Filice, and Eric Powers (all of whom performed as session musicians with Great White on February 20, 2003) have filed a motion for summary judgment and that Plaintiffs may seek to depose them concerning these and the approximately twenty other motions for summary judgment that have been filed.  See id.  To avoid overlap and duplication, the Jack Russell Defendants urge that limitations be placed on the length and scope of the inquiry at their depositions "as is consistently done in multi-party, complex litigation matters such as this."  Id. at 3.  Lastly, they state that "pending Plaintiffs' filing of their remaining discovery proposals, [the Jack Russell Defendants] are unaware of the entire scope of deposition testimony and discovery that Plaintiffs wish to obtain from them."  Id.

As Plaintiffs' additional requests for discovery regarding the pending motions for summary judgment have now been filed, the concern of the Jack Russell Defendants expressed in points three and four above is moot.  Regarding their second point (greater specificity as to the identity of all deponents), the Court addressed this concern partially at the June 13th hearing when it directed counsel for the Gray Plaintiffs to identify by name within twenty-one days which of the twenty-six non-plaintiff witnesses they wish to depose.[12]  See Tape of 6/13/07 hearing. The Court further addresses that concern later in this order.

As for their first point (Mr. Russell's assertion of his privilege against self-incrimination), the Court agrees that it warrants separate consideration and need not be addressed here. Thus, to the extent this Memorandum and Order authorizes discovery against Mr. Russell, he remains free to assert his privilege.  In the meantime, counsel should confer regarding the

---

[12] The Gray Plaintiffs complied with this directive on June 29, 2007, when they filed a supplement to their discovery request.  See Gray Plaintiffs' Supplement to Motion for Discovery (Gray Doc. #1450).

14

discovery which is sought from Mr. Russell to see if the matter can be resolved without Court involvement.  If counsel are unable to reach agreement, the matter should be brought to the Court's attention by way of either a motion to compel or a motion for a protective order.

## D.  Clear Channel Objection

Clear Channel objects to the Motion on the ground that the Gray Plaintiffs seek inquiry into areas which are unrelated to the determinative legal issue.  See Clear Channel Objection at 1-2.  That issue, according to Clear Channel, is whether Clear Channel had the requisite control over the planning and operation of the Great White concert at The Station nightclub sufficient to give rise to a legally-cognizable duty of care with respect to the injuries sustained by those who attended that concert.  See id. at 2.

Clear Channel argues that Judge Lagueux in ruling on Clear Channel's Motion to Dismiss, see Gray v. Derderian, 389 F.Supp.2d 308 (D.R.I. 2005), distilled Plaintiffs' allegations to a single legal theory, namely that "[w]here there is a claim of sponsorship liability, courts generally review the facts and circumstances to determine if the sponsor had any control over the sponsored event."  Clear Channel Objection at 2 (quoting Gray v. Derderian, 389 F.Supp.2d at 313)(alteration in original). This single legal theory is threatened, in Clear Channel's view, by the Gray Plaintiffs' Motion for Discovery which it sees "as an attempt either to relitigate legal theories and issues that were rejected in the proceedings on the Clear Channel Defendants' Motion to Dismiss, or to interject new legal theories that Plaintiffs either ignored or chose not to raise at the Motion to

Dismiss stage."[13]  Id. at 4.  Thus, Clear Channel contends that "Plaintiffs' discovery -- at least for the present time -- should be confined to WHJY's control over the planning and operation of the Great White concert at The Station nightclub ...."  Id. at 3.

## E.  Ruling Re Motions

In ruling on the instant Motions, this Magistrate Judge is guided by paragraph 4 of the Interim Scheduling Order and by Judge Lagueux's decision in Gray v. Derderian, 389 F.Supp.2d 308 (D.R.I. 2005), and in particular the following excerpt:

Plaintiffs allege that Defendants exercised control over the concert in the following areas:

---

[13] Clear Channel complains that "Plaintiffs have filed what amounts to a further legal brief advancing a number of theories and arguments (in a series of footnotes) which are neither supported by the allegations in their Complaint nor analytically connected to the dispositive issue of 'control.'"  Clear Channel Objection at 3.  Presumably, an example of one such footnote in the Gray Plaintiffs' Motion for Discovery is the following:

Although the [Sroka v.] Halliday decision [97 A. 965 (R.I. 1916)] focused on a duty of care that arose out of the control retained within a written agreement, that duty of care may arise out of, can derive from and be established by a variety of other sources including the alleged tortfeasor's self-imposed guidelines and policies for the activities in which it willingly engages.  While the Rhode Island Supreme Court has not expressly adopted Section 323 of the Restatement 2d Torts, it has clearly endorsed the principle that "even one who assumes to act gratuitously may become subject to the duty of acting carefully if he acts at all."  Davis v. New England Pest Control Co., 576 A.2d 1240, 1242 (RI 1990).  The rule that "a duty voluntarily assumed must be performed with due care[,]"  Mullins v. Pine Manor College, 389 Mass. 47, 52 (1983)[,] is also the rule in a majority of jurisdictions, and plaintiffs seek to establish the facts pertaining to Clear Channel's control and right to control aspects of the planning and operation of the concert, and Clear Channel's policies relating to those activities.

Gray Plaintiffs' Motion for Discovery at 3 n.7.  The Court agrees with Clear Channel that the above footnote suggests theories of liability beyond the one identified by Judge Lagueux in Gray v. Derderian, 389 F.Supp.2d 308 (D.R.I. 2005).

- deciding whether or not to sponsor the concert;
- soliciting attendance through promotion, advertising and the distribution of free tickets;
- coordinating promotional activities with the other sponsors before and during the concert;
- providing radio station interns to be present at The Station during the concert; and
- providing disc jockey Mike Gonsalves to serve as master of ceremonies, introduce the band and essentially run the show. Plaintiffs allege that Mike Gonsalves, as master of ceremonies, had "the authority and opportunity to stop or delay Great White's performance over any issue relating to safety or equipment." Master Complaint, ¶ 398.

These allegations support the reasonable inferences that WHJY discussed the concert with The Station ahead of time, that WHJY had the opportunity to set down some conditions or guidelines before it agreed to sponsor the concert, and that WHJY had an agreement with The Station and the other sponsors about which group would handle which duties before and during the concert. Most significantly, Mike Gonsalves, as master of ceremonies, was on the stage, presumably aware of the plans to set off the fireworks, and certainly appears to have had the opportunity to delay the concert in order to investigate the propriety of those plans. Plaintiffs' allegations, if proven, and the inferences drawn therefrom indicate that WHJY had some measure of control over the events of the evening of February 20, 2003.

Following the lead of the cases outlined above, the Court determines that, **to the extent that Plaintiffs can establish that WHJY had control over the planning and operation of the concert, then the Court can find that WHJY owed a duty, commensurate with its measure of control, to the Plaintiffs.** That duty, if proven to exist, may have been breached when WHJY failed to take any steps to prevent the ignition of the fireworks inside the small and crowded nightclub.

Gray v. Derderian, 389 F.Supp.2d at 316 (bold added).

In light of the above, this Magistrate Judge agrees with Clear Channel that the Gray Plaintiffs' Motion for Discovery is

overly broad, although not to the extent that Clear Channel
alleges.  Thus, to the extent Plaintiffs seek to conduct
discovery into: 1) the corporate practices of Clear Channel
Defendants other than WHJY;[14] 2) the knowledge of Clear Channel
Defendants other than WHJY; 3) the knowledge of personnel,
employees, and/or interns of Clear Channel Defendants other than
the personnel, employees, and/or interns of WHJY; and 4) post
fire policies and procedures for participation, sponsorship, and
promotion of live entertainment events, the motions are denied.
The issue raised by Clear Channel's Motion for Summary Judgment
is WHJY's control over the planning and operation of the February
20, 2003, Great White concert at The Station.[15]  See [Clear
Channel's] Memorandum in Support of their Motion for Summary
Judgment at 10-19.

Therefore, pursuant to paragraph 4 of Interim Scheduling
Order and Judge Lagueux's decision in Gray v. Derderian, 389
F.Supp.2d 308 (D.R.I. 2005), Plaintiffs shall be permitted to
take the following discovery:

---

[14] As to this particular discovery, the Court considered the
following hypothetical.  Assume that at the time of the fire Clear
Channel Broadcasting, Inc., had a written policy that none of its
radio stations were to allow any of their employees to act as a master
of ceremonies at a concert without first obtaining a written agreement
from the concert organizers that the master of ceremonies had the
authority to stop or delay the performance if there was a dangerous or
hazardous situation.  If WHJY obtained such an agreement, it would
clearly be relevant and must be produced.  However, if WHJY failed to
obtain such an agreement, the existence of this corporate policy on
the part of Clear Channel Broadcasting, Inc., is irrelevant to the
issue of whether WHJY exercised control over the planning and
operation of the concert at issue.

[15] Despite the breadth of the discovery sought by the Gray
Plaintiffs' Motion for Discovery, Plaintiffs acknowledge that the
material facts placed in issue by Clear Channel's Motion for Summary
Judgment are those "bearing on control, and right to control ...."
Affidavit of Counsel Pursuant to Fed. Rule Civ. P. 56(f) (Gray Doc.
#1433) ¶ 4.

(1) Written, documentary, and deposition discovery (including deposition discovery, pursuant to Fed. R. Civ. P. 30(b)(6)) regarding any contracts, agreements, letters of understanding, memoranda of understanding (or similar documents)[16] between WHJY, on the one hand, and any other person or entity, on the other, relating to the February 20, 2003, Great White concert at The Station (the "Concert") and/or to any other concert or live entertainment event at The Station during the three years preceding the fire (collectively "the concerts");[17]

(2) Written, documentary, and deposition discovery as to all acts by WHJY (including its personnel, employees, and/or interns) in the planning of and/or preparation for the concerts, including:

    a.    Written and documentary discovery of the identity of all WHJY personnel, employees, and/or interns who were involved in any acts taken in the planning of and/or preparation for the concerts;

    b.    Written and documentary discovery of any contracts, agreements, letters of understanding, memoranda of understanding (or similar documents)

---

[16] To the extent that any document incorporates by reference or refers to another document, the other document must also be produced.

[17] The Court includes this three year period after considering the following hypothetical.  Assume that two years before the fire WHJY provided one of its employees to serve as a master of ceremonies at a concert at The Station and that employee delayed the start of the concert for one hour because some WHJY promotional items, which the employee had been instructed to distribute before the concert began, were late in arriving.  The fact that the employee, who had been engaged as a master of ceremonies, delayed the concert on this prior occasion would be relevant in determining the authority of the master of ceremonies on the night of the fire.

between WHJY and/or any of its personnel, employees, and/or interns, on the one hand, and any other person or entity, on the other, regarding the concerts;

c.    Written and documentary discovery of any communications between or among (i) any WHJY personnel, employees, and/or interns, and/or (ii) WHJY (and/or any of its personnel, employees, and/or interns), on the one hand, and any other person or entity, on the other, regarding the concerts;

d.    Deposition discovery, pursuant to Fed. R. Civ. P. 30(b)(6), of WHJY as to its role in the planning of and/or preparation for the concerts;

e.    Deposition discovery of any personnel, employee, and/or intern of WHJY as to his or her role in the planning of and/or preparation for the concerts; and

f.    Deposition discovery of any other person or entity with knowledge as to the role of WHJY (including any of its personnel, employees, and/or interns) in the planning of and/or preparation for the concerts, regarding the role of WHJY and/or any of its personnel, employees, and/or interns in the planning of and/or preparation for the concerts.

(3)  Written, documentary, and deposition discovery as to all acts by WHJY (including its personnel, employees, and/or

interns) while present at The Station nightclub on the date(s) of the concerts, including:

     a.   Written and documentary discovery of the identity of all WHJY personnel, employees, and/or interns who were present at The Station on the date(s) of the concerts;

     b.   Written and documentary discovery of any agreements, contracts, letters of understanding, memoranda of agreement (or similar documents) between WHJY and/or any of its personnel, employees, and/or interns, on the one hand, and any other person or entity, on the other, relating to the presence of anyone from or on behalf of WHJY at The Station on the date(s) of the concerts;

     c.   Written and documentary discovery of any communications  between or among (i) any WHJY personnel, employees, and/or interns, and/or (ii) WHJY (including any of its personnel, employees, and/or interns), on the one hand, and any other person or entity, on the other, regarding the presence and/or activities of WHJY personnel, employees, and/or interns at The Station on the date(s) of the concerts;

     d.   Deposition discovery, pursuant to Fed. R. Civ. P. 30(b)(6), as to the presence of any of its personnel, employees, and/or interns (including the activities of same while present) at The

Station on the date(s) of the concerts;

e.    Deposition discovery of any personnel, employee, and/or intern of WHJY as to his or her activities while present at The Station on the date(s) of the concerts; and

f.    Deposition discovery of any other person or entity with knowledge as to the activities of any WHJY personnel, employees, and/or interns while such personnel, employees, and/or interns of WHJY were present at The Station on the night of the concerts, regarding activities of WHJY and/or any of its personnel, employees, and/or interns while the same were present at The Station on the date(s) of the concerts.

(4)   Written, documentary, and deposition discovery as to the activities of Michael Gonsalves at The Station on the night of the Concert, including:

a.    Written and documentary discovery as to Gonsalves' appearance at The Station on the night of the Concert;

b.    Written and documentary discovery as to any contracts and/or agreements between Gonsalves and any other person or entity in relation Gonsalves' activities at The Station on the night of the Concert;

c.    Written and documentary discovery of any

22

communications between Gonsalves and any WHJY
personnel, employees, and/or interns regarding
Gonsalves' activities at The Station on the night
of the Concert;

d.  Written and documentary discovery of any
communications between WHJY, on the one hand, and
any other person or entity, on the other hand,
regarding Gonsalves' activities at The Station on
the night of the Concert;

e.  Deposition discovery, pursuant to Fed. R. Civ. P.
30(b)(6), of WHJY regarding Gonsalves' activities
at The Station on the night of the Concert;

f.  Deposition discovery of any personnel, employee,
and/or intern of WHJY regarding Gonsalves'
activities at The Station on the night of the
Concert; and

g.  Deposition discovery of any other person or entity
with knowledge regarding Gonsalves' activities at
The Station on the night of the Concert.

(5)  Written, documentary, and deposition discovery as to
the on-stage activities *(and preparations for those activities)*
at The Station on the night of the Concert, as those activities
are described in Clear Channel's Motion for Summary Judgment,
including:

a.  Written and documentary discovery regarding all
persons identified in the Motion for Summary

23

Judgment as appearing on stage during the course
of the evening and the activities of such persons
while on stage;

b.   Deposition discovery from the persons identified
in Paragraph (5)a. above regarding on-stage
activities at The Station on the night of the
concert and their respective roles in those
activities.


**F.   Coordination and Control of Discovery**

In order to avoid subjecting parties and persons to multiple
and repetitious requests for discovery, the Court hereby gives
notice that it intends to appoint a Plaintiffs' Discovery
Committee (the "Committee").   The mission of the Committee will
be to coordinate and consolidate discovery requests relating to
the pending motions for summary judgment so that, to the maximum
extent possible:

1)   a party or person to whom such requests are directed
receives one consolidated request for production,
receives one consolidated request for answers to
interrogatories, and is able to respond to such
consolidated requests by sending the responses to a
central location where they will be forwarded to the
appropriate recipients;

2)   parties and persons are deposed only once and not
subjected to overly long and/or repetitious questioning;

3)   depositions are noticed well in advance (e.g., at least
21 days) at a suitable location which is able to
accommodate all counsel who are interested in

attending.[18]

No request for discovery authorized by this Memorandum and Order shall be propounded until it has been reviewed and approved by the Committee.  All Plaintiffs' attorneys interested in serving on the Committee shall submit a letter so stating to this Magistrate Judge by July 27, 2007.  The Court will conduct a hearing relative to the mission, composition, and operation of the Committee prior to its appointment.  Counsel may submit suggestions prior to that hearing as to how the goals stated above can best be achieved.

So ordered.


ENTER:


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 13, 2007

---

[18] Depending on availability, it may be possible to utilize Courtroom C in the Pastore Building (or another courtroom) for some depositions as to which many counsel express a desire to attend.  The Plaintiffs' Discovery Committee should contact the Clerk if it is interested in pursuing this option.