UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND


ALBERT L. GRAY, Administrator, et al.,    :
                              Plaintiffs,  :
                                           :
            vs.                            :      CA 04-312L
                                           :
JEFFREY DERDERIAN, et al.,                 :
                              Defendants.   :



ESTATE OF JUDE B. HENAULT, et al.,        :
                              Plaintiffs,  :
                                           :
            vs.                            :      CA 03-483L
                                           :
AMERICAN FOAM CORPORATION, et al.,         :
                              Defendants.   :


**REPORT AND RECOMMENDATION**

**RE PLAINTIFFS' MOTION TO APPROVE SETTLEMENT**

**WITH WEST WARWICK DEFENDANTS**

David L. Martin, United States Magistrate Judge

        Before the Court is Plaintiffs'[1] Motion to Approve "Good

---

        [1] The Plaintiffs are the plaintiffs in the following cases: <u>Gray, et al. v. Derderian, et al.</u>, C.A. No. 04-312L; <u>Napolitano, et al. v. Derderian, et al.</u>, C.A. No. 06-080L; <u>Passa, et al. v. Derderian, et al.</u>, C.A. No. 03-148L; <u>Kingsley, et al. v. Derderian, et al.</u>, C.A. No. 03-208L; <u>Guindon, et al. v. American Foam Corp., et al.</u>, C.A. No. 03-335L; <u>Henault, et al. v. American Foam Corp., et al.</u>, C.A. No. 03-483L; <u>Roderiques, et al. v. American Foam Corp., et al.</u>, C.A. No. 04-026L; <u>Sweet, et al. v. American Foam Corp., et al.</u>, C.A. No. 04-056L; <u>Paskowski, et al. v. Derderian, et al.</u>, C.A. No. 05-002L; <u>Kolasa v. American Foam Corp., et al.</u>, C.A. No. 05-070L; <u>Long v. American Foam Corporation</u>, C.A. No. 06-047L; <u>Malagrino v. American Foam Corp., et al.</u>, C.A. No. 06-002L; and <u>Gonsalves v. Derderian, et al.</u>, C.A. No. 06-076L.  (Note: <u>Guindon, et al. v. Leggett & Platt, Inc., et al.</u>, C.A. No. 07-366L, was consolidated with <u>Guindon, et al. v. American Foam Corp., et al.</u>, CA 03-335L.  <u>See</u> Order granting Plaintiffs' Motion to Consolidate (Doc. #7 in C.A. No. 07-366L).)

Faith" Settlement with West Warwick Defendants in Accordance with
R.I.G.L. §§ 10-6-7 and 10-6-8 (<u>Gray</u> Doc. #1970)(<u>Henault</u> Doc.
#1110) ("Motion").  The Motion has been referred to me for
preliminary review, findings, and recommended disposition
pursuant to 28 U.S.C. § 636(b)(1)(B).  No objection has been
filed to the Motion, and the Court has determined that no hearing
is necessary.  For the reasons stated herein, I recommend that
the Motion be granted.

## Background

The facts giving rise to these actions have been concisely
stated by Senior Judge Ronald R. Lagueux and are reproduced
below:

> On February 20, 2003, a deadly fire in West Warwick,
> Rhode Island, destroyed a nightclub known as the Station.
> The fire started as the featured rock band, Great White,
> began its live performance and the club was crowded with
> spectators, staff and performers.  The concert featured
> stage fireworks, ignited by the band's tour manager as
> the band took the stage.
>
> According to eyewitnesses, the fireworks created sparks
> behind the stage which ignited foam insulation materials
> on the club's ceiling and walls.  In minutes, the entire
> building was on fire and over 400 people were struggling
> to escape the crowded, dark and smoky space.  One hundred
> people died and over 200 others were injured as a result
> of the fire.
>
> Numerous lawsuits, both criminal and civil, were filed
> throughout southern New England in both state and federal
> courts.  The civil lawsuits have been consolidated in
> this Court, which asserted its original federal
> jurisdiction based on the Multiparty, Multiforum Trial
> Jurisdiction Act of 2002, 28 U.S.C. § 1369.  <u>See</u> <u>Passa v.</u>
> <u>Derderian</u>, 308 F.Supp.2d 43 (D.R.I. 2004).

Gray v. Derderian, 472 F.Supp.2d 172, 175 (D.R.I. 2007).

## Overview

All Defendants in the lawsuits arising out of the Station Night Club Fire have reached settlements in principle with all Plaintiffs.  See Memorandum of Law by the "Triton Defendants"[2] n Support of Motion to Approve "Good Faith" Settlement in Accordance with R.I.G.L. §§ 10-6-7, 10-6-8 ("Triton Mem.") at 1 n.1.[3]  By the instant Motion, Plaintiffs seek an order finding that the settlement which they have reached with Defendants Denis P. Larocque, Anthony Bettencourt, Stephen D. Murray, and Malcolm Moore, in his capacity as Finance Director of the Town of West Warwick (the "West Warwick Defendants") in the amount of $10,000,000 (ten million dollars) constitutes a "good faith settlement" under R.I. Gen. Laws §§ 10-6-7 and 10-6-8.[4]  See

---

[2] The Triton Defendants are: Triton Realty Limited Partnership; Triton Realty, Inc.; Raymond J. Villanova; Frances A. Villanova; Framingham-150 FR Realty Limited Partnership by Framingham-150 FR Realty, Inc., its General Partner; and Seekonk-226 Limited Partnership by Seekonk-226, Inc., its General Partner.  See Triton Motion at 1 n.1.

[3] The Triton Defendants' memorandum was filed in support of the Motion to Approve "Good Faith" Settlement in Accordance with R.I.G.L. §§10-6-7, 10-6-8 on behalf of the "Triton Defendants" (Gray Doc. #1944)(Henault Doc. #1091) ("Triton Defendants' Motion").  This memorandum can be readily accessed through the Court's Electronic Case Filing system.

[4] The two statutes are reproduced below:

10-6-7. Effect of release of one tortfeasor on liability of others. — A release by the injured person of one joint

3

Motion at 1.  Such a finding is necessary to extinguish all potential contribution claims by joint tortfeasors once the requisite releases have been executed.

_____

tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

However, in circumstances where there are twenty-five (25) or more deaths from a single occurrence, then a release by the injured person of one joint tortfeasor given as part of a judicially approved **good-faith settlement,** whether before or after judgment, does not discharge the other tortfeasors unless the release so provides but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release.

R.I. Gen. Laws § 10-6-7 (bold added).

10-6-8. Liability to contribution of tortfeasor released by injured person. – A release by the injured person of one joint tortfeasor does not relieve him or her from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors.

However, in circumstances where there are twenty-five (25) or more deaths from a single occurrence, a release by the injured person of one joint tortfeasor given as part of a judicially approved **good-faith settlement** does not relieve him or her from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction to the extent of the amount of the consideration paid for the release.

R.I. Gen. Laws § 10-6-8 (bold added).

## Standard of Review

In a helpful and well reasoned memorandum, the Triton Defendants argue that the standard for determining whether a settlement is a "good faith settlement" under R.I. Gen. Laws § 10-6-7 and § 10-6-8 is the non-collusive,[5] non-tortious standard.[6]  See Triton Mem. at 1-22.  They argue that the other two standards, i.e., the "proportionate liability" standard formulated by the California Supreme Court in Tech-Bilt, Inc. v.

---

[5] The collusion proscribed by the good faith standard occurs when the arm's length negotiation between plaintiff and settling tortfeasor breaks down.  Dacotah Marketing and Research, L.L.C. v. Versatility, Inc., 21 F.Supp.2d 570, 578 (E.D. Va. 1998).  As the Dacotah Marketing court explained:

> If the plaintiff no longer seeks to gain as much as possible through settlement, but is otherwise motivated, the nonsettling defendant is left exposed, his interests unprotected in a transaction that may significantly affect those interests.  Collusion in violation of [Virginia's "good faith" settlement statute] occurs when the release is given with the tortious purpose of intentionally injuring the interests of nonsettling parties, rather than as the product of arm's length bargaining based on the facts of the case and the merits of the claim.  When settlement ceases to be the result of a bargain at arm's length, it is no longer a "good faith" settlement.

Id. (footnotes omitted).

[6] The Court also acknowledges the helpfulness of the memorandum filed by the Clear Channel Defendants.  See Memorandum of Law in Support of the Clear Channel Defendants'[1] Motion to Approve "Good Faith" Settlement in Accordance with Rhode Island General Laws §§ 10-6-7 and 10-6-8 ("Clear Channel Mem.").  This memorandum was filed in support of The Clear Channel Defendants'[1] Motion to Approve "Good Faith" Settlement in Accordance with Rhode Island General Laws §§ 10-6-7 and 10-6-8 (Gray Doc. #1960)(Henault Doc. #1100) ("Clear Channel Defendants' Motion").

<u>Woodward-Clyde & Assocs.</u>, 698 P.2d 159 (Cal. 1985),[7] and the

"totality of the circumstances" standard employed by the court in

<u>Troyer v. Adams</u>, 77 P.3d 83, 83-99 (Haw. 2003), are

inapplicable.[8]

The memorandum provides an informative discussion of the

purpose of the 2006 amendments to the Rhode Island Contribution

Among Tortfeasors Act ("RICATA"), and the Court reproduces that

discussion below:

> On July 3, 2006, sections 10-6-7 and 10-6-8 of Rhode
> Island's Contribution Among Tortfeasors Act were amended
> to address a limited group of tort actions – single
> occurrence mass torts resulting in 25 or more deaths.
> <u>See</u> P.L. 2006, ch. 213, sec. 2.   Section 10-6-7 was
> amended by the addition of the following paragraph:
>
> > ... in circumstances where there are twenty-five

---

[7] The <u>Tech-Bilt</u> majority opinion has been widely criticized.  <u>See</u>
<u>Troyer v. Adams</u>, 77 P.3d 83, 104-05 (Haw. 2003)(citing and discussing
cases); <u>id.</u> at 105 ("[W]e are not aware of *any* state jurisdiction,
other than California, that has adopted the <u>Tech-Bilt</u> standard in
whole ...."); <u>Miller v. Riverwood Recreation Ctr., Inc.</u>, 546 N.W.2d
684, 688 (Mich. Ct. App. 1996)(disagreeing with <u>Tech-Bilt</u> majority and
listing other courts which have also rejected its approach); <u>see also</u>
<u>Copper Mountain, Inc. v. Poma of America, Inc.</u>, 890 P.2d 100, 108
(Col. 1995) (declining to adopt the "reasonable range" test set forth
in <u>Tech-Bilt</u> because of "the intent of the legislature and the
important public policy in favor of settlement of disputes").

[8] The key difference between the "totality of the circumstances"
standard and the "proportionate liability" standard is:

> the role of the settling defendant's unknown proportionate
> liability.  Under the proportionate liability standard the
> trial court must consider that element, while under the
> "totality of [the] circumstances" approach the trial justice
> has the discretion to consider it or not, depending upon his
> or her evaluation of the other circumstances known at the time
> of the settlement.

Triton Mem. at 19.

> (25) or more deaths from a single occurrence, then
> a release by the injured person of one joint
> tortfeasor given as part of a **judicially approved
> good-faith settlement**, whether before or after
> judgment, does not discharge the other tortfeasors
> unless the release so provides **but reduces the
> claim against the other tortfeasors in the amount
> of the consideration paid for the release.**

(Emphasis added).  Section 10-6-8 was amended to
provide:

> However, in circumstances where there are
> twenty-five (25) or more deaths from a single
> occurrence, a release by the injured person of one
> joint tortfeasor given as part of a **judicially
> approved good-faith settlement** does not relieve him
> or her from liability to make contribution to
> another joint tortfeasor unless the release is
> given before the right of the other tortfeasor to
> secure a money judgment for contribution has
> accrued, and **provides for a reduction to the extent
> of the amount of the consideration paid for the
> release.**

(Emphasis added).

Where there is a good faith pre-trial settlement in
a single occurrence mass tort the 2006 amendments
eliminate the statutory right of set-off based on
proportionate liability, and the statutory right of
contribution it represents.  The amendment effectively
restores common law principles to this class of mass
torts, which means that, if the settlement is in "good
faith" the remaining defendants' rights to contribution
from a settling defendant are extinguished, and any
judgment rendered against a remaining defendant will be
reduced only by the dollar amount of the settlement –
regardless of what the settling tortfeasor's percentage
of fault for the tort might be.  This mechanism serves to
facilitate and encourage settlement in single occurrence
mass torts, because if the amount of the settlement is
less than the settling defendant's proportionate share of
the damages award, the plaintiff no longer bears the risk
of such a settlement – the defendants who choose not to
settle do.  Since plaintiffs have less risk in settling,
and defendants have more risk in not settling, the
amendments create a stronger incentive for settlement

> agreements to be reached in single accident mass torts
> than exists under the general statutory contribution
> scheme for all other torts.  The amendments did so by
> removing proportionate liability as a determining factor
> from the statutory scheme.

Triton Mem. at 9-10.

After explaining the purpose of the 2006 amendments, the memorandum argues persuasively that the non-collusive, non-tortious standard is the only standard consistent with the concept of "good faith" envisioned by the amendments:

> Although the 2006 amendments to Rhode Island's
> Contribution Among Tortfeasors Act do not define what
> constitutes a "good faith" settlement, it is apparent
> that the proportionate liability of the settling
> defendant was not intended to play a role, or at least
> not a decisive role, in evaluating whether the settlement
> was reached in good faith.
>
> Three things are clear about the Act.  First, the
> proportionate liability of multiple defendants was an
> essential and integral component of the pre-2006 Act,
> notwithstanding the fact it placed the risk of pretrial
> settlements on the injured party.  Second, the 2006
> amendments explicitly eliminated proportionate liability
> as a consideration in single occurrence mass torts
> resulting in the deaths of 25 or more people in order to
> encourage and facilitate settlements.  Third, encouraging
> and facilitating pre-trial settlements in single
> occurrence mass torts was the *raison d'être* for the 2006
> amendments.
>
> The non-collusive, non-tortious standard for
> evaluating whether a settlement is in good faith is the
> only standard in which the defendant's proportionate
> liability is not a factor.  It would be incongruous to
> conclude that, while the 2006 amendments expressly
> removed the proportionate liability requirement from §10-
> 6-7 and §10-6-8 to encourage pre-trial settlements in
> single occurrence mass torts, the General Assembly
> simultaneously intended to silently restore propor-
> tionate liability as a component in the good faith
> analysis of a settlement, and reintroduce that

8

impediment.   Reading proportionate liability into the
2006 amendments — by applying the "proportionate
liability" or "totality of the circumstances" standards
for good faith — after it had been expressly removed,
would frustrate, if not negate, the entire purpose of the
amendments.   It is virtually certain that the Rhode
Island Supreme Court, which "makes every effort to
effectuate the legislative intent, while avoiding
construing a statute to reach an absurd result[,]" Bucki
v. Hawkins, 914 A.2d 491, 497 (R.I. 2007), or frustrate
the plain intent of a statute, Matter of Falstaff Brewing
Corp., 637 A.2d 1047, 1050 (R.I. 1994), would reject the
proportionate liability test, and would not approve a
totality of [the] circumstances test in which
proportionate liability played a role of any
significance.

The history, purpose and terms of the 2006
amendments convincingly demonstrate that the "non-
collusive, non-tortious" good faith standard is the only
standard consistent with the concept of "good faith"
envisioned by the 2006 amendments.   Therefore,
notwithstanding the amount of a settlement and any
speculation concerning the settling defendant's
proportionate share of fault, in the absence of
collusion, fraud, dishonesty, or some other wrongful or
tortious conduct intended to prejudice the remaining
defendants, a pre-trial settlement in a single occurrence
mass tort must be approved by the Court, thereby
extinguishing any potential liability for contribution
from the settling defendant to the remaining defendants.

Id. at 21-22 (alteration in original).

In view of the purpose of the 2006 amendments to the Rhode

Island Contribution Among Tortfeasors Act and Rhode Island's

strong policy favoring the settlement of controversies in lieu of

litigation, Ryan v. Roman Catholic Bishop of Providence, 941 A.2d

174, 186 (R.I. 2008); Skaling v. Aetna Ins. Co., 799 A.2d 997,

1012 (R.I. 2002), this Court finds that the applicable standard

is the non-collusive, non-tortious standard, see Noyes v.

Raymond, 548 N.E.2d 196, 200 (Mass. App. Ct. 1990)(finding no
basis for denying discharge to a settling defendant absent
suggestion that the settlement was collusive or otherwise
wrongful); see also Miller v. Riverwood Recreation Ctr., Inc.,
546 N.W.2d 684, 688-89 (Mich. Ct. App. 1996)(finding that the
Tech-Bilt approach would severely undermine the settlement goal
of the Michigan statute and concluding that "good faith" should
be analyzed with respect to the settling parties' negotiations
and intent); Copper Mountain, Inc. v. Poma of America, Inc., 890
P.2d 100, 108 (Col. 1995) (holding that under Colorado version of
Uniform Contribution Among Tort-feasors Act "a settlement is
reached in good faith in the absence of collusive conduct").

### Burden of Proof

The party relying upon a settlement in seeking to be
discharged has the initial burden of establishing that a
settlement has been agreed upon and its nature and terms.  Noyes
v. Raymond, 548 N.E.2d at 200; accord United States v. Dynamics
Research Corp., 441 F.Supp.2d 259, 268 (D. Mass. 2006).  The
burden then shifts back to the other party which is required to
raise a legitimate issue of good faith.  United States v.
Dynamics Research Corp., 441 F.Supp.2d at 268; Copper Mountain,
Inc. v. Poma of America, Inc., 890 P.2d at 108 ("it is the burden
of the party challenging the agreement to prove that the
agreement was collusive"); see also Noyes v. Raymond, 548 N.E.2d

10

at 200 ("Consistent with the statute's policy of encouraging
settlements, ... the burden of coming forward with some showing
of lack of good faith ought to rest, we think, with those
opposing the discharge.").  "If the non-settling party can raise
a legitimate issue of good faith then it is entitled to an
evidentiary hearing, but such hearings should be the exception
given the statute's goal of encouraging settlement." United
States v. Dynamics Research Corp., 441 F.Supp.2d at 269.  Thus,
there is a presumption that the settlement has been made in good
faith, and the burden is on the challenging party to show that
the settlement is infected with collusion or other tortious or
wrongful conduct.  Dacotah Marketing & Research, L.L.C. v.
Versatility, Inc., 21 F.Supp.2d 570, 578 (E.D. Va. 1998); see
also Barmat v. John and Jane Doe Partners A-D, 797 P.2d 1223,
1228 (Ariz. Ct. App. 1990)("We do not assume that parties to an
agreement acted collusively.  We presume that they acted in good
faith and require the challenging party to prove a lack
thereof.").

## Discussion

In support of their contention that the $10,000,000
settlement with the West Warwick Defendants has been reached in
"good faith," R.I. Gen. Laws §§ 10-6-7, 10-6-8, Plaintiffs
represent that:

The settlement agreement reached between the West

11

Warwick Defendants and all Plaintiffs resulted from extensive negotiations between counsel for the parties, each in pursuit of their respective clients' interests. In the final analysis, the settlement may be regarded by some Plaintiffs as small in light of the Town's culpability through fire inspector Denis Larocque. Conversely, its amount, from the standpoint of taxpayers, may be regarded by some as large in current economic times.   This tension and mutual discomfort with the eventual negotiated amount are the hallmarks of a vigorously negotiated compromise settlement.

The settlement with the West Warwick Defendants is also completely congruent with that struck with the State of Rhode Island, the other principal for which Deputy Fire Marshal Larocque was agent.  (Larocque, while an employee of West Warwick, was simultaneously a duly-appointed Deputy State Fire Marshal and was, thus, an agent of both the Town and the State.)  Each is vicariously liable for his negligence.  Both the Town and [the] State struck identical amount settlements ($10,000,000 each), consistent with their identical liabilities through Larocque.

The negotiations leading to this settlement were vigorous, with ample presentation of arguments from both sides, even as the parties continued to litigate the merits of the case.  Plaintiffs' counsel, in writings and personal presentations to Town decision-makers, addressed the following issues in substantial detail:

- Dual agency of Fire Marshal Larocque;

- Larocque's calculation of permitted occupancy at The Station (including his characterizing the entire building as "standing room");

- Larocque's failure to note highly flammable polyurethane foam on the club's walls during multiple inspections;

- The results of the "match flame test" prescribed by the Rhode Island Fire Code for testing flammablility of acoustical materials, if performed on the foam in the club; and

- Failure to note "change of use" of building from family restaurant to standup concert

venue     for     purposes     of     sprinkler
grandfathering.

For their part, the West Warwick Defendants,
through their counsel, advanced arguments on:

• Statutory immunity of state fire marshals;

• Qualified immunity provided by the "public
duty doctrine," and

• Considerations of possible intervening causes
such as illegal use of pyrotechnics.

The negotiations continued over many months with
Plaintiffs countering the Defendants' arguments with
evidence of "lack of good faith effort" on the part of
Larocque and "egregiousness" of the Defendants'
negligence, sufficient to overcome both the statutory
fire marshal immunity and the public duty doctrine.

In the end, the compromise took over six months to
reach and resulted from vigorous arm's length bargaining.
It culminated in the filing of a Notice of Settlement for
the Town of West Warwick, Denis Larocque, Stephen Murray
and Anthony Bettencourt, signed by counsel for the
Plaintiffs and Defendants, on August 18, 2008 [Gray Doc.
#1898].   There was no collusion in the negotiation
process. Rather, the parties consistently were guided by
their own individual interests and never engaged in any
tortious conduct intended to injure any non-settling
party. Additionally, nothing in the settlement agreement
itself imposes any injurious effect on any non-settling
party.

Memorandum of Law in Support of Plaintiffs'[1] Motion to Approve

"Good Faith" Settlement with West Warwick Defendants in

Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Plaintiffs'

Mem.") at 3-5.

Based on the above representation and the information

contained in the Affidavit of John P. Barylick in Support of

Plaintiffs' Motion to Approve "Good Faith" Settlement with West

Warwick Defendants in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Barylick Aff."), I find that the agreement between the Plaintiffs and the West Warwick Defendants to settle all claims for the gross amount of $10,000,000 (ten million dollars) is a non-collusive agreement which has been negotiated, bargained for, and agreed to at arm's length and in good faith.  Thus, the settlement satisfies the standard for "a judicially approved good-faith settlement" within the meaning of R.I. Gen. Laws §§ 10-6-7, 10-6-8.  Accordingly, I recommend that the Motion be granted and that any potential contribution claims against the West Warwick Defendants be extinguished with prejudice pursuant to these statutory sections.

### Conclusion

For the reasons stated above, I recommend that the Motion be granted.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10)[9] days of its receipt.  See Fed. R. Civ. P. 72(b); D.R.I. LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st

---

[9] The ten days do not include intermediate Saturdays, Sundays, and legal holidays.  See Fed. R. Civ. P. 6(a).

Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 22, 2009