```
             UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF RHODE ISLAND
```

ALBERT L. GRAY, Administrator, et al.,   :
                   Plaintiffs,   :
                                :
      vs.                       :      CA 04-312L
                                :
JEFFREY DERDERIAN, et al.,          :
                   Defendants.  :


ESTATE OF JUDE B. HENAULT, et al.,   :
                   Plaintiffs,  :
                                :
      vs.                       :      CA 03-483L
                                :
AMERICAN FOAM CORPORATION, et al.,    :
                   Defendants.  :

**REPORT AND RECOMMENDATION**

**RE PLAINTIFFS' MOTIONS TO APPROVE SETTLEMENTS**

**WITH HOWARD JULIAN AND THE INSURANCE INSPECTION DEFENDANTS**

David L. Martin, United States Magistrate Judge

    Before the Court are two additional motions[1] filed by

---

[1] The Court has previously granted twelve motions filed by multiple defendants to approve settlements. See Memorandum and Order Re: Report and Recommendation – Twelve Defendants' Motions to Approve Settlements Dated May 22, 2009 (<u>Gray</u> Doc. #2011)(<u>Henault</u> Doc. #1147). The Court has also previously granted one motion filed by Plaintiffs to approve a settlement. See Memorandum and Order Re: Report and Recommendation – Plaintiffs' Motion to Approve Settlement with West Warwick Defendants – Dated May 22, 2009 (<u>Gray</u> Doc. #2010)(<u>Henault</u> Doc. #1146). In addition, this Magistrate Judge has recommended that seven more motions to approve settlements be granted. See Report and Recommendation Re Seven Defendants's Motions to Approve Settlements (<u>Gray</u> Doc. #2028)(<u>Henault</u> Doc. #1163).

Plaintiffs[2] to approve settlements:

    1.  Plaintiffs'[] Motion to Approve "Good Faith" Settlement with Defendant Howard Julian in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 (Gray Doc. #2002)(Henault Doc. #1137) ("Motion to Approve Julian Settlement"); and

    2.  Plaintiffs'[] Assented-To Motion to Approve "Good Faith" Settlement with Insurance Inspection Defendants[3] in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 (Gray Doc. #2026)(Henault Doc. #1161) ("Motion to Approve Insurance Inspection Defendants Settlement").

Collectively, the motions are referred to as the "Motions." The Motions have been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). No objections have been filed to the Motions, and the Court has determined that no hearing is necessary. For the

---

[2] The Plaintiffs are the plaintiffs in the following cases: Gray, et al. v. Derderian, et al., C.A. No. 04-312L; Napolitano, et al. v. Derderian, et al., C.A. No. 06-080L; Passa, et al. v. Derderian, et al., C.A. No. 03-148L; Kingsley, et al. v. Derderian, et al., C.A. No. 03-208L; Guindon, et al. v. American Foam Corp., et al., C.A. No. 03-335L; Henault, et al. v. American Foam Corp., et al., C.A. No. 03-483L; Roderiques, et al. v. American Foam Corp., et al., C.A. No. 04-026L; Sweet, et al. v. American Foam Corp., et al., C.A. No. 04-056L; Paskowski, et al. v. Derderian, et al., C.A. No. 05-002L; Kolasa v. American Foam Corp., et al., C.A. No. 05-070L; Long v. American Foam Corporation, C.A. No. 06-047L; Malagrino v. American Foam Corp., et al., C.A. No. 06-002L; and Gonsalves v. Derderian, et al., C.A. No. 06-076L. (Note: Guindon, et al. v. Leggett & Platt, Inc., et al., C.A. No. 07-366L, was consolidated with Guindon, et al. v. American Foam Corp., et al., C.A. No. 03-335L. See Order Granting Plaintiffs' Motion to Consolidate (Doc. #7 in C.A. No. 07-366L).)

[3] The Insurance Inspection Defendants are: Anchor Solutions Co., Inc.; Essex Insurance Company; V.B. Gifford & Company, Inc.; Gresham & Associates of R.I., Inc.; Gresham & Associates of Rhode Island, Inc.; Multi-State Inspections, Inc.; High Caliber Inspections, Inc.; Underwriters at Lloyds, London; and Surplex Underwriters Inc. See Plaintiffs'[] Assented-To Motion to Approve "Good Faith" Settlement with Insurance Inspection Defendants[] in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 (Gray Doc. #2026)(Henault Doc. #1161) ("Motion to Approve Insurance Inspection Defendants Settlement") at 1 n.2.

reasons stated herein, I recommend that the Motions be granted.

## Background

The facts giving rise to these actions have been concisely stated by Senior Judge Ronald R. Lagueux and are reproduced below:

> On February 20, 2003, a deadly fire in West Warwick, Rhode Island, destroyed a nightclub known as the Station. The fire started as the featured rock band, Great White, began its live performance and the club was crowded with spectators, staff and performers. The concert featured stage fireworks, ignited by the band's tour manager as the band took the stage.
>
> According to eyewitnesses, the fireworks created sparks behind the stage which ignited foam insulation materials on the club's ceiling and walls. In minutes, the entire building was on fire and over 400 people were struggling to escape the crowded, dark and smoky space. One hundred people died and over 200 others were injured as a result of the fire.
>
> Numerous lawsuits, both criminal and civil, were filed throughout southern New England in both state and federal courts. The civil lawsuits have been consolidated in this Court, which asserted its original federal jurisdiction based on the Multiparty, Multiforum Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369. See Passa v. Derderian, 308 F.Supp.2d 43 (D.R.I. 2004).

Gray v. Derderian, 472 F.Supp.2d 172, 175 (D.R.I. 2007).

## Overview

All Defendants in the lawsuits arising out of the Station Nightclub Fire have reached settlements in principle with all

Plaintiffs.  See Memorandum of Law By the "Triton Defendants"[4] in Support of Motion to Approve "Good Faith" Settlement in Accordance with R.I.G.L. §§10-6-7, 10-6-8 ("Triton Mem.") at 1 n.1.[5]  By the instant Motions, Plaintiffs seek an order finding that the settlements which they have reached with Defendant Howard Julian and the Insurance Inspection Defendants constitute "good faith settlements" under R.I. Gen. Laws §§ 10-6-7 and 10-6-8.[6]  See Motion at 1.  Such a finding is necessary to extinguish

---

[4] The Triton Defendants are: Triton Realty Limited Partnership; Triton Realty, Inc.; Raymond J. Villanova; Frances A. Villanova; Framingham-150 FR Realty Limited Partnership by Framingham-150 FR Realty, Inc., its General Partner; and Seekonk-226 Limited Partnership by Seekonk-226, Inc., its General Partner.  See Motion to Approve "Good Faith" Settlement in Accordance with R.I.G.L. §§10-6-7, 10-6-8 on behalf of the "Triton Defendants" (Gray Doc. #1944)(Henault Doc. #1091) ("Triton Defendants' Motion") at 1 n.1.

[5] The Triton Mem. was filed in support of the Triton Defendants' Motion.  The memorandum can be readily accessed through the Court's Electronic Case Filing system.

[6] The two statutes are reproduced below:

10-6-7. Effect of release of one tortfeasor on liability of others. — A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

However, in circumstances where there are twenty-five (25) or more deaths from a single occurrence, then a release by the injured person of one joint tortfeasor given as part of a judicially approved **good-faith settlement**, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release.

4

all potential contribution claims by joint tortfeasors once the requisite releases have been executed.

## Standard of Review

In a helpful and well reasoned memorandum, the Triton Defendants argue that the standard for determining whether a settlement is a "good faith settlement" under R.I. Gen. Laws § 10-6-7 and § 10-6-8 is the non-collusive,[7] non-tortious

---

R.I. Gen. Laws § 10-6-7 (bold added).

> 10-6-8. Liability to contribution of tortfeasor released by injured person. – A release by the injured person of one joint tortfeasor does not relieve him or her from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors.
>
> However, in circumstances where there are twenty-five (25) or more deaths from a single occurrence, a release by the injured person of one joint tortfeasor given as part of a judicially approved **good-faith settlement** does not relieve him or her from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction to the extent of the amount of the consideration paid for the release.

R.I. Gen. Laws § 10-6-8 (bold added).

[7] The collusion proscribed by the good faith standard occurs when the arm's length negotiation between plaintiff and settling tortfeasor breaks down. Dacotah Marketing & Research, L.L.C. v. Versatility, Inc., 21 F.Supp.2d 570, 578 (E.D. Va. 1998). As the Dacotah Marketing court explained:

> If the plaintiff no longer seeks to gain as much as possible through settlement, but is otherwise motivated, the nonsettling defendant is left exposed, his interests

standard.[8]  See Triton Mem. at 1-22.  They argue that the other two standards, i.e., the "proportionate liability" standard formulated by the California Supreme Court in Tech-Bilt, Inc. v. Woodward-Clyde & Assocs., 698 P.2d 159 (Cal. 1985),[9] and the "totality of the circumstances" standard employed by the court in Troyer v. Adams, 77 P.3d 83, 83-99 (Haw. 2003), are

---

>   unprotected in a transaction that may significantly affect those interests.  Collusion in violation of [Virginia's "good faith" settlement statute] occurs when the release is given with the tortious purpose of intentionally injuring the interests of nonsettling parties, rather than as the product of arm's length bargaining based on the facts of the case and the merits of the claim.  When settlement ceases to be the result of a bargain at arm's length, it is no longer a "good faith" settlement.

Id. (footnotes omitted).

[8] The Court also acknowledges the helpfulness of the memorandum filed by the Clear Channel Defendants.  See Memorandum of Law in Support of the Clear Channel Defendants'[] Motion to Approve "Good Faith" Settlement in Accordance with Rhode Island General Laws §§ 10-6-7 and 10-6-8 ("Clear Channel Mem.").  This memorandum was filed in support of The Clear Channel Defendants'[] Motion to Approve "Good Faith" Settlement in Accordance with Rhode Island General Laws §§ 10-6-7 and 10-6-8 (Gray Doc. #1960)(Henault Doc. #1100) ("Clear Channel Defendants' Motion").

[9] The Tech-Bilt majority opinion has been widely criticized.  See Troyer v. Adams, 77 P.3d 83, 104-05 (Haw. 2003)(citing and discussing cases); id. at 105 ("[W]e are not aware of *any* state jurisdiction, other than California, that has adopted the Tech-Bilt standard in whole ...."); Miller v. Riverwood Recreation Ctr., Inc., 546 N.W.2d 684, 688 (Mich. Ct. App. 1996)(disagreeing with Tech-Bilt majority and listing other courts which have also rejected its approach); see also Copper Mountain, Inc. v. Poma of America, Inc., 890 P.2d 100, 108 (Colo. 1995) (declining to adopt the "reasonable range" test set forth in Tech-Bilt because of "the intent of the legislature and the important public policy in favor of settlement of disputes").

inapplicable.[10]

The memorandum provides an informative discussion of the purpose of the 2006 amendments to the Rhode Island Contribution Among Tortfeasors Act ("RICATA"), and the Court reproduces that discussion below:

> On July 3, 2006, sections 10-6-7 and 10-6-8 of Rhode Island's Contribution Among Tortfeasors Act were amended to address a limited group of tort actions – single occurrence mass torts resulting in 25 or more deaths. See P.L. 2006, ch. 213, sec. 2. Section 10-6-7 was amended by the addition of the following paragraph:
>
>> ... in circumstances where there are twenty-five (25) or more deaths from a single occurrence, then a release by the injured person of one joint tortfeasor given as part of a **judicially approved good-faith settlement**, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides **but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release**.
>
> (Emphasis added). Section 10-6-8 was amended to provide:
>
>> However, in circumstances where there are twenty-five (25) or more deaths from a single occurrence, a release by the injured person of one joint tortfeasor given as part of a **judicially approved good-faith settlement** does not relieve him

---

[10] The key difference between the "totality of the circumstances" standard and the "proportionate liability" standard is

> the role of the settling defendant's unknown proportionate liability.  Under the proportionate liability standard the trial court must consider that element, while under the "totality of [the] circumstances" approach the trial justice has the discretion to consider it or not, depending upon his or her evaluation of the other circumstances known at the time of the settlement.

Triton Mem. at 19.

> or her from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and **provides for a reduction to the extent of the amount of the consideration paid for the release**.

(Emphasis added).

> Where there is a good faith pre-trial settlement in a single occurrence mass tort the 2006 amendments eliminate the statutory right of set-off based on proportionate liability, and the statutory right of contribution it represents. The amendment effectively restores common law principles to this class of mass torts, which means that, if the settlement is in "good faith" the remaining defendants' rights to contribution from a settling defendant are extinguished, and any judgment rendered against a remaining defendant will be reduced only by the dollar amount of the settlement – regardless of what the settling tortfeasor's percentage of fault for the tort might be. This mechanism serves to facilitate and encourage settlement in single occurrence mass torts, because if the amount of the settlement is less than the settling defendant's proportionate share of the damages award, the plaintiff no longer bears the risk of such a settlement – the defendants who choose not to settle do. Since plaintiffs have less risk in settling, and defendants have more risk in not settling, the amendments create a stronger incentive for settlement agreements to be reached in single accident mass torts than exists under the general statutory contribution scheme for all other torts. The amendments did so by removing proportionate liability as a determining factor from the statutory scheme.

Triton Mem. at 9-10.

After explaining the purpose of the 2006 amendments, the memorandum argues persuasively that the non-collusive, non-tortious standard is the only standard consistent with the concept of "good faith" envisioned by the amendments:

> Although the 2006 amendments to Rhode Island's

8

Contribution Among Tortfeasors Act do not define what constitutes a "good faith" settlement, it is apparent that the proportionate liability of the settling defendant was not intended to play a role, or at least not a decisive role, in evaluating whether the settlement was reached in good faith.

Three things are clear about the Act. First, the proportionate liability of multiple defendants was an essential and integral component of the pre-2006 Act, notwithstanding the fact it placed the risk of pretrial settlements on the injured party. Second, the 2006 amendments explicitly eliminated proportionate liability as a consideration in single occurrence mass torts resulting in the deaths of 25 or more people in order to encourage and facilitate settlements. Third, encouraging and facilitating pre-trial settlements in single occurrence mass torts was the *raison d'être* for the 2006 amendments.

The non-collusive, non-tortious standard for evaluating whether a settlement is in good faith is the only standard in which the defendant's proportionate liability is not a factor. It would be incongruous to conclude that, while the 2006 amendments expressly removed the proportionate liability requirement from §10-6-7 and §10-6-8 to encourage pre-trial settlements in single occurrence mass torts, the General Assembly simultaneously intended to silently restore proportionate liability as a component in the good faith analysis of a settlement, and reintroduce that impediment. Reading proportionate liability into the 2006 amendments — by applying the "proportionate liability" or "totality of the circumstances" standards for good faith — after it had been expressly removed, would frustrate, if not negate, the entire purpose of the amendments. It is virtually certain that the Rhode Island Supreme Court, which "makes every effort to effectuate the legislative intent, while avoiding construing a statute to reach an absurd result[,]" Bucki v. Hawkins, 914 A.2d 491, 497 (R.I. 2007), or frustrate the plain intent of a statute, Matter of Falstaff Brewing Corp., 637 A.2d 1047, 1050 (R.I. 1994), would reject the proportionate liability test, and would not approve a totality of [the] circumstances test in which proportionate liability played a role of any significance.

> The history, purpose and terms of the 2006 amendments convincingly demonstrate that the "non-collusive, non-tortious" good faith standard is the only standard consistent with the concept of "good faith" envisioned by the 2006 amendments.  Therefore, notwithstanding the amount of a settlement and any speculation concerning the settling defendant's proportionate share of fault, in the absence of collusion, fraud, dishonesty, or some other wrongful or tortious conduct intended to prejudice the remaining defendants, a pre-trial settlement in a single occurrence mass tort must be approved by the Court, thereby extinguishing any potential liability for contribution from the settling defendant to the remaining defendants.

Id. at 21-22 (first alteration in original).

In view of the purpose of the 2006 amendments to the RICATA and Rhode Island's strong policy favoring the settlement of controversies in lieu of litigation, Ryan v. Roman Catholic Bishop of Providence, 941 A.2d 174, 186 (R.I. 2008); Skaling v. Aetna Ins. Co., 799 A.2d 997, 1012 (R.I. 2002), this Court finds that the applicable standard is the non-collusive, non-tortious standard, see Noyes v. Raymond, 548 N.E.2d 196, 200 (Mass. App. Ct. 1990)(finding no basis for denying discharge to a settling defendant absent suggestion that the settlement was collusive or otherwise wrongful); see also Miller v. Riverwood Recreation Ctr., Inc., 546 N.W.2d 684, 688-89 (Mich. Ct. App. 1996)(finding that the Tech-Bilt approach would severely undermine the settlement goal of the Michigan statute and concluding that "good faith" should be analyzed with respect to the settling parties' negotiations and intent); Copper Mountain, Inc. v. Poma of America, Inc., 890 P.2d 100, 108 (Colo. 1995)(holding that under

10

Colorado version of Uniform Contribution Among Tort-feasors Act "a settlement is reached in good faith in the absence of collusive conduct").

### Burden of Proof

The party relying upon a settlement in seeking to be discharged has the initial burden of establishing that a settlement has been agreed upon and its nature and terms. Noyes v. Raymond, 548 N.E.2d at 200; accord United States v. Dynamics Research Corp., 441 F.Supp.2d 259, 268 (D. Mass. 2006). The burden then shifts back to the other party which is required to raise a legitimate issue of good faith. United States v. Dynamics Research Corp., 441 F.Supp.2d at 268; Copper Mountain, Inc. v. Poma of America, Inc., 890 P.2d at 108 ("it is the burden of the party challenging the agreement to prove that the agreement was collusive"); see also Noyes v. Raymond, 548 N.E.2d at 200 ("Consistent with the statute's policy of encouraging settlements, ... the burden of coming forward with some showing of lack of good faith ought to rest, we think, with those opposing the discharge."). "If the non-settling party can raise a legitimate issue of good faith then it is entitled to an evidentiary hearing, but such hearings should be the exception given the statute's goal of encouraging settlement." United States v. Dynamics Research Corp., 441 F.Supp.2d at 269. Thus, there is a presumption that the settlement has been made in good

11

faith, and the burden is on the challenging party to show that the settlement is infected with collusion or other tortious or wrongful conduct. Dacotah Marketing & Research, L.L.C. v. Versatility, Inc., 21 F.Supp.2d 570, 578 (E.D. Va. 1998); see also Barmat v. John & Jane Doe Partners A-D, 797 P.2d 1223, 1228 (Ariz. Ct. App. 1990)("We do not assume that parties to an agreement acted collusively.  We presume that they acted in good faith and require the challenging party to prove a lack thereof.").

**Discussion**

**1. Motion to Approve Julian Settlement**

Plaintiffs seek an order approving their $3,000.00 (three thousand dollar) settlement with Defendant Howard Julian as a "good faith" settlement in accordance with R.I. Gen. Laws §§ 10-6-7 and 10-6-8 so as to extinguish all potential claims by joint tortfeasors against Howard Julian. See Motion to Approve Julian Settlement at 1.  In support of this motion, Plaintiffs represent that:

> The settlement agreement reached between Howard Julian and all Plaintiffs resulted from arm's length negotiations between counsel for the parties, each in pursuit of their respective clients' interests.
>
> The negotiations leading to this settlement were vigorous, with ample presentation of arguments from both sides, even as the parties continued to litigate the merits of the case.  A[t] the time settlement agreement was reached, Defendant Julian had pending a Motion for Summary Judgment.

12

> In the final analysis, Plaintiffs' decision to accept Defendant Julian's offer of $3,000 to settle claims against him resulted from his bankruptcy counsel's written representation that, absent such settlement, Julian would seek to discharge any judgment against him by filing for personal bankruptcy and that there would be no non-exempt assets available for the benefit of unsecured creditors such as Plaintiffs. (See Affidavit of John P. Barylick, Esq. filed herewith.)
>
> In the end, the compromise took several weeks to reach and resulted from vigorous arm's length bargaining. It was the last defendant settlement to be struck in the consolidated cases. It culminated in the filing of a Notice of Settlement for Howard Julian (Pacer Doc. No. 1908), signed by counsel for the Plaintiffs and Defendant pro se[] on September 8, 2008. There was no collusion in the negotiation process. Rather, the parties consistently were guided by their own individual interests and never engaged in any tortious conduct intended to injure any non-settling party. Additionally, nothing in the settlement agreement itself imposes any injurious effect on any non-settling party.

Memorandum of Law in Support of Plaintiffs'[] Motion to Approve "Good Faith" Settlement with Defendant Howard Julian in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Plaintiffs' Julian Mem.") at 3-4.

Based on the above representation and the information contained in the Affidavit of John P. Barylick in Support of Plaintiffs' Motion to Approve "Good Faith" Settlement with Defendant Howard Julian in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Barylick Aff. Re Julian"), I find that the agreement between the Plaintiffs and Howard Julian to settle all claims for the gross amount of $3,000.00 (three thousand dollars) is a non-collusive agreement which has been negotiated, bargained for, and

agreed to at arm's length and in good faith.  Thus, the settlement satisfies the standard for "a judicially approved good-faith settlement" within the meaning of R.I. Gen. Laws §§ 10-6-7, 10-6-8.  Accordingly, I recommend that the Motion be granted and that any potential contribution claims against Howard Julian be extinguished with prejudice pursuant to these statutory sections.

**2.   Motion to Approve Insurance Inspection Defendants Settlement**

Plaintiffs seek an order approving their gross settlement with the Insurance Inspection Defendants in the total amount of $262,500.00 as a "good faith" settlement in accordance with R.I. Gen. Laws §§ 10-6-7 and 10-6-8 so as to extinguish all potential claims by joint tortfeasors against them.  See Motion to Approve Insurance Inspection Defendants Settlement at 1-2.  The amounts being paid by each settling Insurance Inspection Defendant are as follows:

| | |
|---|---|
| Anchor Solutions Company, Inc. | $ 10,000.00 |
| Essex Insurance Company | $100,000.00 |
| V.B. Gifford & Company, Inc. | $  7,500.00 |
| Gresham & Associates of R.I., Inc. Gresham & Associates of Rhode Island, Inc. | $ 10,000.00 |
| High Caliber Inspections, Inc. | $   - 0 - [11] |

---

[11] Plaintiffs state that "High Caliber Inspections, Inc.[,] and Multi-State Inspections, Inc.[,] lacked sufficient resources to contribute toward settlement.  Appeals of judgments in their favor

14

| | |
|---|---|
| Multi-State Inspections, Inc. | $  - 0 - |
| Surplex Underwriters Inc. | $ 35,000.00 |
| Underwriters at Lloyds, London | $100,000.00 |
| TOTAL: | $262,500.00 |

Motion to Approve Insurance Inspection Defendants Settlement at 2.

By way of background as to this motion, Plaintiffs state:

In all of the consolidated Station fire lawsuits, the Plaintiffs alleged that the Insurance Inspection Defendants were negligent in inspecting the subject premises and that such negligence proximately resulted in multiple deaths and injuries at The Station nightclub on February 20, 2003. All Insurance Inspection Defendants filed Motions to Dismiss based upon alleged lack of legal duty toward[s] the Plaintiffs; said Motions were granted by this Court on November 9, 2005 (Essex, Multi-State and High Caliber – Gray Doc. No. 587), December 6, 2005 (Underwriters at Lloyds, London – Gray Doc. No. 608), December 13, 2006 (Anchor Solutions Company, Inc., V.B. Gifford & Company, Inc., Gresham & Associates of R.I., Inc. and Surplex Underwriters Inc. – Gray Doc. No. 1122) and December 15, 2006 (Gresham & Associates of Rhode Island, Inc. – Gray Doc. No. 1125).

The Insurance Inspection Defendants (Anchor Solutions Company, Inc., Essex Insurance Company, V.B. Gifford & Company, Inc., Gresham & Associates of R.I., Inc., Gresham & Associates of Rhode Island, Inc., Multi-State Inspections, Inc., High Caliber Inspections, Inc.[,] and Underwriters at Lloyds, London) thereafter moved for entry of judgment pursuant to Fed. R. Civ. P. 54(b), which Motion was granted and judgment was entered in favor of said Defendants on April 9, 2008 (Gray Doc. No. 1824).

---

are, however, being dismissed as part of the global settlement with all Defendants." Motion to Approve Insurance Inspection Defendants Settlement at 2 n.3.

15

>      Insurance Inspection Defendant Surplex Underwriters Inc. moved separately for entry of judgment pursuant to Fed. R. Civ. P. 54(b) on April 15, 2008 (Gray Doc. No. 1827), which Motion was granted and judgment was entered in favor of Defendant Surplex Underwriters Inc. on May 7, 2008 (Gray Doc. No. 1840).
>
>      Plaintiffs timely appealed from entry of judgment in favor of the Insurance Inspection Defendants, and those appeals were presently pending in the United States Court of Appeals for the First Circuit, docketed under two matter numbers, 08-1574 and 08-1575.  During the pendency of these appeals, settlement was struck with the Insurance Inspection Defendants and, accordingly, notices of settlement were filed to advise this Court of the fact of settlement (Gray Doc. No. 1907).
>
>      At the suggestion of the First Circuit Settlement Counsel, Plaintiffs moved in that court for dismissal of the pending appeals, without prejudice to reinstatement, to allow the District Court to approve the settlements which had been struck.  The First Circuit granted that Motion on July 2, 2009[,] entering the dismissal orders ....[12]
>
>      Accordingly, Plaintiffs have filed the instant Motion to approve the good faith nature of all of the Insurance Inspection Defendants' settlements.

Memorandum of Law in Support of Plaintiffs'[] Assented-To Motion to Approve "Good Faith" Settlement with Insurance Inspection Defendants[] in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Plaintiffs' Insurance Inspection Defendants Mem.") at 2-3.

In support of the motion, Plaintiffs state that:

>      The settlement agreements reached between the Insurance Inspection Defendants and all Plaintiffs resulted from arm's length negotiations between counsel

---

[12] Copies of the dismissal orders are attached as Exhibit A to the Memorandum of Law in Support of Plaintiffs'[] Assented-To Motion to Approve "Good Faith" Settlement with Insurance Inspection Defendants[] in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Plaintiff's Insurance Inspection Defendants Mem.").

> for the parties, each in pursuit of their respective clients' interests. The consideration being paid by each Defendant is [stated on pages 14-15 of this Report and Recommendation].
>
> The negotiations leading to settlement with each Defendant were vigorous, with ample presentation of arguments from both sides, even as the appeals remained pending.
>
> In the final analysis, Plaintiffs' decision to accept the Insurance Inspection Defendants' offers (totaling $262,500) to settle claims against them was driven by their appreciation of Plaintiffs' likelihood of success in litigating the single issue on appeal (absence of legal duty), tempered by consideration of each Defendant['s] available assets to respond to a judgment. (See Affidavit of John P. Barylick, Esq. ....)[13]
>
> In the end, the compromise took several weeks to reach and resulted from vigorous arm's length bargaining. It culminated in the filing of Notices of Settlement in the District Court.  There was no collusion in the negotiation process.  Rather, the parties consistently were guided by their own individual interests and never engaged in any tortious conduct intended to injure any non-settling party.  Additionally, nothing in the settlement agreements themselves impose any injurious effect on any non-settling party.  Indeed, these settlements were among the very last to be struck; therefore, they had little if any effect on other defendants.

Plaintiffs' Insurance Inspection Defendants Mem. at 5-6.

Based on the above representation and the information contained in the Affidavit of John P. Barylick in Support of Plaintiffs'[] Assented-To Motion to Approve "Good Faith" Settlement with the Insurance Inspection Defendants[] in Accordance with R.I.G.L. §§ 10-6-7 and 10-6-8 ("Barylick Aff. Re

---

[13] The Affidavit of John P. Barylick is Exhibit A to Plaintiffs' Insurance Inspection Defendants Mem.

Insurance Inspection Defendants"), I find that the agreement between the Plaintiffs and the Insurance Inspection Defendants to settle all claims for individual settlements totaling $262,500 is a non-collusive agreement which has been negotiated, bargained for, and agreed to at arm's length and in good faith.  Thus, the settlement satisfies the standard for "a judicially approved good-faith settlement" within the meaning of R.I. Gen. Laws §§ 10-6-7, 10-6-8.  Accordingly, I recommend that the Motion be granted and that any potential contribution claims against each Insurance Inspection Defendant be extinguished with prejudice pursuant to these statutory sections.

### Conclusion

For the reasons stated above, I recommend that the Motions be granted.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10)[14] days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

---

[14] The ten days do not include intermediate Saturdays, Sundays, and legal holidays.  See Fed. R. Civ. P. 6(a).

<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
August 14, 2009